A96A2491. NATIONAL GENERAL INSURANCE COMPANY v. UNITED SERVICES AUTOMOBILE ASSOCIATION.
(482 SE2d 727)

JOHNSON, Judge.

In this appeal, we are asked to address the following issue: Which of two uninsured motorist insurance carriers is primarily responsible for providing coverage to an injured person insured

under both policies, when the carrier that received the injured insured's premiums claims its policy provides coverage only in excess of any other available uninsured motorist coverage, and where the policies were issued in different states. For the reasons set out below, we affirm the trial court's ruling that the uninsured motorist carrier which received the injured insured's premiums is primarily responsible for coverage.

For summary judgment purposes, the parties stipulated to the following facts: Buford Pender, a Michigan resident, rode in a car owned and driven by Melvin Pender, a Georgia resident. Buford Pender was injured when a car driven by Gregory Miles collided with the car in which the Penders rode. The collision occurred in Georgia. Buford Pender's damages amounted to $62,500. Miles was insured by Coronet Insurance Company, but had only $7,500 available in bodily injury liability coverage for Buford Pender's claim. Buford Pender had $20,000 uninsured motorist coverage with National General Insurance Company; the policy was issued and delivered in Michigan. Melvin Pender had $100,000 per person uninsured motorist coverage through United Services Automobile Association ("USAA"); this policy was issued and delivered in Georgia. Coronet has agreed to pay Buford Pender the $7,500 available under its policy. National General and USAA both agree that Buford Pender qualifies as an insured eligible for uninsured motorist coverage under their policies, but disagree as to which uninsured motorist insurer is primarily responsible for providing the remaining coverage.

Buford Pender (hereinafter "Pender") sued Miles and, because Miles was underinsured, served USAA and National General as the carriers responsible for providing him with uninsured motorist coverage. National General moved for summary judgment claiming that under the terms of its policy and Michigan law, which it argues governs its policy, National General's uninsured motorist coverage is not reached until after USAA's uninsured motorist limits are reached. USAA filed a cross-motion for summary judgment, contending National General is primarily obligated to provide coverage for Pender because Pender paid his premiums to National General and therefore, under Georgia law, National General is Pender's primary insurer. The trial court found that National General was the primary insurer and granted USAA's cross-motion for summary judgment. National General appeals.

National General contends the trial court erred in determining that it is the primary uninsured motorist insurance carrier when Michigan law applies to the interpretation of its contract, and under Michigan law and the terms of its policy, its coverage is only excess over USAA's limits.

National General points to the "other insurance" clause con-

tained in its policy, which provides that if there is any other applicable insurance, any insurance National General provides with respect to a vehicle the insured does not own *"shall be excess over any other collectible insurance."* National General interprets this clause as meaning that its coverage is not reached until after USAA's uninsured motorist coverage is exhausted.[1] Under National General's interpretation, because of the limits on the USAA policy, its coverage should not be reached at all in this case.

We agree with National General that if construction of its contract were the issue, Michigan law would govern. Georgia follows the doctrine of lex loci contractus, which means that where a pleaded contract is executed in a foreign state and contains nothing to indicate that it was intended to be construed as a Georgia contract, it will be treated as a contract of the foreign state, and governed by its laws, unless the foreign state's laws are contrary to the public policy of this state. *Terry v. Mays*, 161 Ga. App. 328, 329 (1) (291 SE2d 44) (1982). However, we are not dealing with the construction of either National General's or USAA's contract. Both companies concede that their policies contemplate coverage in this case. The question is which uninsured motorist insurer is *initially* obligated to provide coverage, a question which neither contract specifically addresses. Thus, we need not interpret either contract to decide the question presented.

Even if we were required to interpret National General's policy according to Michigan law, we would find no error in the trial court's judgment. We have carefully reviewed the Michigan authority cited by National General and find that it fails to address the issue of which carrier is primarily obligated to provide uninsured motorist coverage when the insured may have coverage through two or more uninsured motorist carriers. Nor has our research revealed any Michigan authority on point. The case upon which National General primarily relies, *Bradley v. Mid-Century Ins. Co.*, 294 NW2d 141 (Mich. S. Ct. 1980), involves only one uninsured motorist insurer and two uninsured motorist policies covering one insured. Id. at 156-157 (II), 161 (C). National General has not shown it is entitled to get in line behind USAA based on Michigan law.

In contrast, the law in Georgia is clear on this issue. Here, "it is the carrier that receives a premium from the injured insured that bears initial responsibility for compensating him up to its policy limits. [Cits.] Where receipt of a premium from the injured insured is shown to exist, *it is controlling to the exclusion of consideration of any other factors which might be otherwise present.*" (Emphasis supplied.)

---

[1] We note that USAA's uninsured motorist provision contains a nearly identical "other insurance" clause, although neither party discusses this point in their briefs.

*Continental Ins. Co. v. Southern Guaranty Ins. Co.*, 193 Ga. App. 395, 396 (1) (388 SE2d 16) (1989). This is true even where there is an "other insurance" clause in the policy issued by the premium recipient. See id. at 396 (2). None of the authority cited by National General addresses the issue of the receipt of premiums by competing uninsured motorist coverage providers and its effect on an "other insurance" clause. Because National General received Pender's premiums, it is primarily responsible for providing coverage, regardless of any other factors. See *Ga. Farm Bureau &c. Ins. Co. v. State Farm &c. Ins. Co.*, 255 Ga. 166, 167 (336 SE2d 237) (1985); see generally *Allstate Ins. Co. v. Fire &c. Ins. Co.*, 181 Ga. App. 610 (353 SE2d 38) (1987).

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 25, 1997 — 

*Chambers, Mabry, McClelland & Brooks, Robert M. Darroch, Karen M. Raby*, for appellant.

*Nickerson & Tuszynski, David E. Tuszynski, Lane, O'Brien & Caswell, Eugene O'Brien, Bovis, Kyle & Burch, Charles M. McDaniel, Jr.*, for appellee.