[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 14, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-14368

_____

D. C. Docket No. 04-00052-CV-HLM-4

JOHN MICHAEL MCGOW,

Plaintiff,

versus

BILLY JOE MCCURRY,

Defendant,

ALLSTATE INDEMNITY COMPANY,

Movant-Appellant,

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

Movant-Appellee.

_____

No. 04-14457

_____

D. C. Docket No. 04-00052-CV-HLM-4

JOHN MICHAEL MCGOW,

                                             Plaintiff-Appellee,

                              versus

BILLY JOE MCCURRY,

                                             Defendant,

AUTO CLUB INSURANCE GROUP OF MICHIGAN,

                                             Movant-Appellant.

                    _____

              Appeals from the United States District Court
                  for the Northern District of Georgia
                    _____

                          (June 14, 2005)

Before ANDERSON, HULL and RONEY, Circuit Judges.

HULL, Circuit Judge:

    In this appeal, three insurance companies – St. Paul Fire & Marine Insurance

Company ("St. Paul"), Auto Club Insurance Group of Michigan ("Auto Club"),

and Allstate Indemnity Company ("Allstate") – dispute which of them bears

primary uninsured motorist ("UM") coverage responsibility for an automobile

accident in which Plaintiff John Michael McGow ("McGow") was injured by an uninsured motorist. Applying Georgia law to interpret the policies, the district court granted St. Paul's motion for summary judgment, concluding that Allstate and Auto Club bear primary responsibility.

On appeal, Allstate and Auto Club argue that the district court erred in applying Georgia law instead of Michigan law in interpreting the insurance policies. Auto Club also argues that the district court lacked personal jurisdiction over it. After review and oral argument, we affirm the district court's exercise of personal jurisdiction over Auto Club but reverse its denial of Auto Club's motion for summary judgment and its grant of summary judgment to St. Paul.

## I. BACKGROUND

### A. The Accident

Plaintiff McGow is a resident of Michigan. The uninsured motorist who injured McGow is Defendant Billy Joe McCurry, a resident of Georgia.

On March 11, 2002, Plaintiff McGow was a passenger in a 2001 Ford Expedition (the "Expedition") traveling northbound on Interstate 75 in Georgia. The Expedition was towing a trailer that contained Plaintiff McGow's motorcycle. Defendant McCurry was traveling northbound on I-75 directly behind the Expedition. McCurry allegedly fell asleep at the wheel. McCurry's vehicle struck

the rear of the trailer attached to the Expedition, and as a result, the Expedition overturned, causing Plaintiff McGow to suffer injuries.

The driver of the Expedition was employed by Cosworth Technologies, Inc. ("Cosworth"). The Expedition was not owned by Cosworth but was owned by Ford Motor Company.[1] St. Paul had issued an insurance policy to Cosworth that included UM coverage on the Expedition.

Allstate had issued an insurance policy for Plaintiff McGow's motorcycle. The Allstate policy also included certain UM coverage for McGow.

In addition, Auto Club had issued Plaintiff McGow an insurance policy for McGow's personal automobile. That Auto Club policy also included UM coverage for McGow.

After the collision, police officers charged Defendant McCurry with following too closely. Although McCurry previously had been insured by State Farm, that insurance apparently had been cancelled prior to the accident, rendering McCurry an uninsured motorist.

**B. The Policies**

Each of the three insurance policies involved in this case provides some primary UM coverage. However, each policy also contains an other-insurance

---

[1]Ford Motor Company had authorized Cosworth to test the Expedition.

clause that seeks to reduce or eliminate that primary coverage when other UM coverage is involved. Thus, we review in detail the UM coverage and the competing other-insurance clauses in each of the three policies.

The St. Paul policy, on which Cosworth was the insured and which covered the Expedition, provided primary UM coverage for both the named insured and other persons protected by the policy, as follows:

> **What This Agreement Covers**
> We'll pay damages the named insured and other persons protected under this agreement are legally entitled to collect from the owner or driver of an uninsured or underinsured vehicle if the damages result from an accident that causes bodily injury to the protected person. However, we'll only pay these damages when the owner's or driver's liability results from owning, maintaining or using the uninsured or underinsured vehicle.

The St. Paul policy provides that protected persons include "[a]nyone in a covered auto or temporary substitute for a covered auto." Thus, McGow, as a passenger in the covered Expedition, is a protected person under St. Paul's policy.

Although St. Paul provided primary UM coverage to McGow, the St. Paul policy contained a provision limiting its coverage if other insurance is involved. The "other insurance" provision in the St. Paul policy states:

> **Other Insurance**
> This agreement provides primary insurance for covered autos the named insured owns and excess insurance for those the named insured doesn't own. Excess insurance applies after other collectible uninsured motorists insurance has been used up.

5

**Insurance written with another company.** When this agreement and other collectible uninsured motorists insurance apply to an uninsured motorists loss on the same primary or excess basis, we'll pay that portion of the loss equal to what our limit of coverage bears to the total available limits.

Thus, if other insurance is involved, the St. Paul policy provides that its primary UM coverage remains primary for the vehicles the insured (Cosworth) owns but becomes excess for vehicles the insured (Cosworth) does not own, such as the Expedition in this case. Thus, St. Paul has what is known as an "excess" other-insurance clause for vehicles the insured does not own.

The Allstate policy, on which McGow was the named insured and which covered McGow's motorcycle trailing the Expedition, also provided primary UM coverage for McGow, as follows:

We will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by an injured person. The bodily injury must be caused by accident and arise out of the ownership, maintenance or use of an uninsured motor vehicle. We will not pay any punitive or exemplary damages.

The Allstate policy also contained the following "other insurance" provision limiting its coverage where other insurance is involved:

**If There Is Other Insurance**
If the insured person was in, on, getting into or out of a vehicle you do not own, which is insured for this coverage under another policy, this coverage will be excess. This means that when the insured person is legally entitled to recover damages in excess of the other policy limit,

6

we will only pay the amount by which the limit of liability of this policy exceeds the limit of liability of that policy.

If more than one policy applies to the accident on a primary basis, the total benefits payable to any one person will not exceed the maximum benefits payable under the policy with the highest limit for uninsured motorists coverage. This applies no matter how many motor vehicles or insurance policies may be involved whether written by Allstate or another company.

(Emphasis added.) Thus, the other-insurance provision in the Allstate primary policy provides that Allstate's coverage will be "excess" when McGow is in a vehicle he does not own and the vehicle is insured by another policy. At the time of the accident, McGow was in a vehicle he did not own (the Expedition), and that vehicle was covered by another policy (St. Paul's). Accordingly, Allstate, like St. Paul, has an "excess" other-insurance clause.

The Auto Club policy, on which McGow was the named insured and which covered McGow's automobile, provides primary UM coverage for McGow as follows:

**INSURING AGREEMENT**
Subject to the Definitions, Exclusions, Conditions and Limits of Liability that apply to this Part, **we** will pay damages for **bodily injury** to an **insured person** which:
a.      is caused by accident; and
b.      arises out of the ownership, operation, maintenance or use of an **uninsured motor vehicle**; and
c.      that **insured person** suffers death, serious impairment of body function or permanent serious disfigurement; and
d.      that **insured person** is legally entitled to recover from the

7

owner or operator of an **uninsured motor vehicle**.

The Auto Club UM policy contains the following "other insurance" clause,

limiting its liability where other insurance is involved:

> **OTHER INSURANCE**
> If there is other Uninsured Motorists Coverage with **us** or any other insurer for a loss covered by this Part, **we** will only be liable to pay for the damages recoverable in the same proportion that the applicable limit of liability of this coverage bears to the sum of all the applicable limits of liability that cover the loss. However, **we** will not be liable under this coverage to pay more than **our** proportionate share, as determined in the manner provided for in the previous sentence, of an amount equal to the highest Limit of Liability that is applicable to the loss.

Thus, when other UM insurance covers part of the loss, the Auto Club primary

policy provides that it will be liable on a pro-rata basis with other insurers. Auto

Club has a "pro-rata" other-insurance clause.

However, the Auto Club policy also contains an important exclusion stating

that its UM coverage will not apply at all to bodily injury sustained by an insured

person (McGow) when that insured occupies a vehicle (the Expedition) that

provides "the same or similar coverage" for the insured. Specifically, the Auto

Club policy provides:

> This coverage does not apply to **bodily injury** sustained by an **insured person** . . . while **occupying a motor vehicle** <u>which provides the same or similar coverage for **you**</u> or a **resident relative**. But this exclusion will not apply to the extent that the Limit of Liability of this coverage is greater in amount than the Limit of Liability of that same

8

or similar coverage.

(Emphasis added.) Auto Club argues that this exclusion is an "escape clause," that this escape clause applies because the St. Paul policy provides "same or similar coverage" for McGow, and thus that Auto Club bears no responsibility at all with regard to McGow's damages.

It is important to note that each of the policies involved in this case is a primary, as opposed to a "true excess," policy. Generally, a "true excess" policy would provide no primary coverage and provide excess coverage only where a separate underlying policy provides primary coverage and the loss exceeds the limit of that primary coverage. In contrast, the St. Paul and Allstate policies are primary policies that contain excess other-insurance provisions, which make their primary insurance "excess" where other insurance is involved (i.e., a second layer of primary coverage to be reached only after the other primary insurance is exhausted). As discussed later in this opinion, these excess other-insurance clauses do not alter the primary nature of the St. Paul and Allstate policies; instead, these clauses may affect the priority of payment among primary policies.

## C. Procedural History

Plaintiff McGow filed suit in state court in Georgia. McGow sought UM insurance benefits from St. Paul, Allstate, and Auto Club. Allstate timely removed

the case to the district court.

Allstate filed its motion for summary judgment arguing that, based on its policy language, Allstate has no UM liability to McGow. St. Paul then filed a cross-motion for summary judgment, arguing that the policies of Allstate and Auto Club provide primary insurance and that St. Paul's provides only excess insurance coverage to McGow. Auto Club then filed a motion to dismiss or alternative motion for summary judgment, contending that the district court lacked personal jurisdiction over Auto Club and that its policy provides no coverage to McGow.

The district court first entered an order on Allstate's and St. Paul's summary-judgment motions. The district court's order granted summary judgment to St. Paul and denied Allstate's motion for summary judgment. The district court concluded that the policies issued by Allstate and Auto Club provided primary coverage to McGow, while the St. Paul policy provided only excess coverage. The order deferred Auto Club's motion.

In a subsequent order, the district court denied Auto Club's motion to dismiss and alternative motion for summary judgment.

This Court granted Allstate's and Auto Club's petitions for permission to appeal these rulings under 28 U.S.C. § 1292(b).

## II. DISCUSSION

10

Before addressing the summary-judgment rulings, we must review the jurisdictional issue raised by Auto Club.

## A. Personal Jurisdiction Over Auto Club

Auto Club issued McGow an automobile insurance policy that covered all of the United States, and the automobile accident in issue occurred in Georgia and resulted in litigation in Georgia. Despite these facts, Auto Club argues on appeal that the district court lacked personal jurisdiction over it and erred in denying Auto Club's motion to dismiss.[2] Auto Club's appeal presents the issue of whether a forum state, like Georgia, can properly exercise personal jurisdiction over an insurer, like Auto Club, whose only relevant contacts with the forum are (1) the inclusion of the forum state within the covered territory of the insurer's policy and (2) the occurrence of the relevant accident in the forum state. For the reasons outlined below, we conclude that the district court properly exercised personal jurisdiction over Auto Club.

This Court has recognized that the Georgia long-arm statute, O.C.G.A. § 9-10-91, confers personal jurisdiction over a non-resident defendant to the maximum extent permitted by due process. Nippon Credit Bank, Ltd. v. Matthews, 291 F.3d

_____

[2]We review de novo the district court's denial of a Rule 12(b)(6) motion to dismiss for lack of personal jurisdiction. Mutual Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1318 (11th Cir. 2004).

11

738, 746 (11th Cir. 2002). In turn, "[d]ue process requires that a non-resident defendant have certain minimum contacts with the forum so that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice." Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1274 (11th Cir. 2002) (citation omitted).

In concluding that sufficient minimum contacts exist between Auto Club and Georgia, the district court properly relied upon a theory of specific, as opposed to general, personal jurisdiction.[3] To constitute minimum contacts for purposes of specific jurisdiction consistent with due process, this Court has stated that the defendant's contacts with the applicable forum must satisfy these three criteria:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum, thus invoking the benefits and protections of its laws. Third, the defendant's contacts with the forum must be such that the defendant should reasonably anticipate being haled into court there.

Francosteel Corp. v. M/V Charm, 19 F.3d 624, 627 (11th Cir. 1994) (quotation marks, punctuation, and citation omitted).

The district court here correctly concluded that Auto Club's contacts with

---

[3]"Specific jurisdiction arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir. 2000) (citation omitted).

12

Georgia satisfied these three criteria and therefore the requirements of due process. First, Auto Club's contact with Georgia – i.e., its inclusion of Georgia within its covered territory for UM coverage, is related to McGow's cause of action for damages covered by the policy.

Second, contrary to Auto Club's arguments, Auto Club purposefully availed itself of the privileges and benefits of providing insurance coverage in Georgia and the entire United States. This Court has not examined whether a territory-of-coverage clause constitutes purposeful availment for purposes of subjecting the insurer to suit in the policy territory. However, at least four other circuits have decided that it can. See Ferrell v. West Bend Mut. Ins. Co., 393 F.3d 786, 791 (8th Cir. 2005) (concluding that territory-of-coverage clause constituted sufficient contact between Wisconsin insurer and Arkansas to subject insurer to suit in Arkansas where the insured event occurred there); Payne v. Motorists' Mut. Ins. Co., 4 F.3d 452, 456 (6th Cir. 1993) (stating that the fact that the insurer "chose to provide coverage for all fifty states . . . constitutes purposeful availment of any individual state's forum"); Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co., 907 F.2d 911, 913 (9th Cir. 1990) (concluding the purposeful-availment requirement was established because the insurance policy coverage extended into

13

Montana and an insured event resulted in litigation there)[4]; <u>Rossman v. State Farm Mut. Auto. Ins. Co.</u>, 832 F.2d 282, 286-87 (4th Cir. 1987); <u>see also</u> <u>Eli Lilly & Co. v. Home Ins. Co.</u>, 794 F.2d 710, 721 (D.C. Cir. 1986) (product liability insurer for a national manufacturer was subject to personal jurisdiction in any forum in which its insured was likely to be subject to suit).

We agree with those circuits. As the Fourth Circuit noted in <u>Rossman</u>, "[p]resumably, [the insurer] offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them. The benefits thereby accruing to [the insurer] are neither fortuitous nor incidental." 832 F.2d at 287. Further, "[i]f [the insurer] wished to avoid suit in [the forum state] or any other forum, it could have excluded that state from the 'policy territory' defined in the policy. [The insurer] is well aware that such a limitation would make its policy less marketable." <u>Id</u>. By including Georgia within its covered territory, Auto Club purposefully sought to provide coverage for accidents occurring in Georgia, with full knowledge that litigation could result and that Auto Club could be haled into court in Georgia and required to make payments in Georgia based on that coverage. Auto Club purposefully included Georgia in its coverage territory in

---

[4]The Ninth Circuit has held that minimum contacts do not exist where the insurer's policy provides for nationwide coverage, but the forum state is <u>not</u> the site of the accident. <u>See</u> <u>Hunt v. Erie Ins. Group</u>, 728 F.2d 1244, 1248 (9th Cir. 1984) (plaintiff sued in home state of California, even though accident was in Colorado).

14

order to charge higher premiums.  See Payne, 4 F.3d at 456 ("The fact that [the insurer] chose to provide coverage for all fifty states – indeed, such coverage is almost certainly the only kind of marketable auto insurance – constitutes purposeful availment of any individual state's forum.").  Under these same circumstances here, Auto Club purposefully availed itself of the privileges of Georgia.

Third, Auto Club reasonably should have foreseen being haled into court in Georgia because its policy covered the entire United States.  Auto Club hence should have recognized that an accident could occur in any state and could result in litigation, and that Auto Club could be called upon to litigate and to pay in Georgia or any other state within the covered territory.  As the Fourth Circuit has noted, "[i]nsurance by its nature involves the assertion of claims, and resort to litigation is often necessary."  Rossman, 832 F.2d at 286 (quotation marks and citation omitted).  Thus, not only was it foreseeable that Auto Club might be sued in Georgia in connection with an accident in Georgia covered by its policy, but the "expectation of being haled into court in a foreign state is an express feature of its policy."  Id.

Auto Club does not argue that the district court's exercise of jurisdiction over it otherwise violates traditional notions of fair play and substantial justice.  In

15

any event, we conclude that it does not. In determining whether jurisdiction comports with traditional notions of fair play and substantial justice, the court looks at: (a) "the burden on the defendant," (b) "the forum State's interest in adjudicating the dispute," (c) "the plaintiff's interest in obtaining convenient and effective relief," (d) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (e) "the shared interest of the several States in furthering fundamental substantive social policies." Meier, 288 F.3d at 1276. Here, the accident occurred in Georgia, the defendant is a resident of Georgia, and Auto Club's policy provided insurance in Georgia. Under these circumstances, we easily conclude that the minimal inconvenience to Auto Club in defending the action in Georgia does not violate traditional notions of fair play and substantial justice.

Accordingly, the district court properly exercised personal jurisdiction over Auto Club in Georgia where its territory-of-coverage clause included Georgia and the accident occurred in Georgia.[5]

---

[5]The Tenth Circuit has expressed hesitance to extend personal jurisdiction to an insurer based purely on the territory-of-coverage clause. OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086, 1093-95 (10th Cir. 1998). In the Tenth Circuit's view, the reasoning of the other circuits was based almost entirely on the foreseeability of being haled into court. "The Supreme Court's directive that foreseeability alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." Id. at 1094 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 295, 100 S. Ct. 559 (1980)) (quotation marks omitted). The Tenth Circuit further criticized the Rossman analysis, arguing that it improperly based its holding on the fact that the defendant did not exclude the forum state from coverage,

16

**B. Who Bears Liability**

We now turn to the main issue in this case: which of the three insurers bears primary responsibility for Plaintiff McGow's UM losses. This issue turns on which state's law applies to the dispute – Georgia's or Michigan's.[6] The district court applied Georgia law. On appeal, Allstate and Auto Club argue that Michigan, and not Georgia, law applies in this case because all three policies in issue were delivered in Michigan.

We first summarize the applicable choice-of-law rules. We then explain why the district court applied Georgia law but should have applied Michigan law.

1. Georgia Choice-of-Law Rules

As described above, this case turns on whether Georgia or Michigan law

---

whereas minimum contacts should be based on the defendant's affirmative actions to create a connection with the forum state. Id. at 1094. But the Tenth Circuit's criticism misses the point that the insurer in each of these cases did more than foresee that its customers would drive in other states; it charged its premiums and made profits on that basis. Further, the insurers affirmatively included the forum state (and every other state) within their covered territories; they did not merely decline to exclude them. By including a forum state within the covered territory and charging premiums on that basis, an insurer purposefully avails itself of the benefits of the forum state.

[6]"This Court reviews a district court's grant of summary judgment de novo, viewing the evidence in the light most favorable to the party opposing the motion. . . . Summary judgment is appropriate when there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Kelley v. Hicks, 400 F.3d 1282, 1284 (11th Cir. 2005) (internal quotation marks and citations omitted). "A district court's resolution of a conflict-of-laws issue is a legal question that we review de novo." Piamba Cortes v. American Airlines, Inc., 177 F.3d 1272, 1296 (11th Cir. 1999).

17

governs the insurers' relative responsibilities. "In determining which law applies, a federal district court sitting in diversity must apply the choice of law rules of the forum state." Trumpet Vine Investments, N.V. v. Union Capital Partners I, Inc., 92 F.3d 1110, 1115 (11th Cir. 1996). Thus, we apply Georgia's choice-of-law rules.

Georgia adheres to the traditional choice-of-law rules for contract – lex loci contractus. Convergys Corp. v. Keener, 276 Ga. 808, 812, 582 S.E.2d 84, 87 (2003). "Under the rule of lex loci contractus, the validity, nature, construction, and interpretation of a contract are governed by the substantive law of the state where the contract was made, except that where the contract is made in one state and is to be performed in another state, the substantive law of the state where the contract is to be performed will apply." Fed. Ins. Co. v. Nat'l Distrib. Co., 203 Ga.App. 763, 765, 417 S.E.2d 671, 673 (1992). Under Georgia law, an insurance contract "is constructively made at the place where the contract is delivered." Id. at 766, 417 S.E.2d at 674-75 (quotation marks and citation omitted). Notwithstanding these general rules, Georgia will not apply the law of another state if the other state's law contravenes Georgia's public policy. See id. at 765, 417 S.E.2d at 674; Terry v. Mays, 161 Ga.App. 328, 329, 291 S.E.2d 44, 45 (1982).

2. District Court Order

18

Applying Georgia's above choice-of-law rules, the district court acknowledged that Plaintiff McGow is a Michigan resident and that the insurance policies were delivered in Michigan. As a result, the district court acknowledged that, under Georgia's choice-of-law rules, Michigan law ordinarily would govern the interpretation of the policies.

The district court then concluded, however, that Michigan law "would allow Allstate [and Auto Club] to avoid completely any responsibility to provide uninsured motorist coverage to Plaintiff, even though Plaintiff paid premiums to Allstate [and Auto Club] for uninsured motorist coverage and expected that Allstate [and Auto Club] would provide such coverage." The district court concluded that this result under Michigan law would contravene Georgia's public policy because: (1) Georgia has a strong interest in ensuring that injured policyholders receive UM coverage for accidents involving uninsured motorists; and (2) Georgia courts have concluded that the best way to protect this interest is to require insurance companies that actually receive premiums from an insured to bear the primary, initial responsibility for providing UM coverage to the insured. Nat'l Gen. Ins. Co. v. United Servs. Auto. Ass'n, 224 Ga.App. 821, 824, 482 S.E.2d 727, 729 (1997) ("[I]t is the carrier that receives a premium from the injured insured that bears initial responsibility for compensating him up to its

19

policy limits," and "[t]his is true even where there is an 'other insurance' clause in the policy issued by the premium recipient."); Continental Ins. Co. v. Southern Guar. Ins. Co., 193 Ga.App. 395, 396, 388 S.E.2d 16, 17 (1990) ("Where receipt of a premium from the injured insured is shown to exist, it is controlling to the exclusion of consideration of any other factors which might be otherwise present.").

Consequently, the district court concluded that application of Michigan law in this case would contravene that public policy of Georgia. The district court then noted that Georgia will not apply the law of another state if the other state's law contravenes Georgia's public policy. See Fed. Ins., 203 Ga. App. at 765, 417 S.E.2d at 674; Terry, 161 Ga.App. at 329, 291 S.E.2d at 45. Accordingly, the district court applied Georgia instead of Michigan law and determined that Allstate and Auto Club bear initial UM responsibility for McGow's compensation, irrespective of the language of the policies, because they both received premiums from McGow, while St. Paul did not. As noted earlier, St. Paul's policy covered the Expedition's passengers, such as McGow, but that insurance was obtained and paid for by Cosworth.

The district court's decision to apply Georgia law thus turned on its conclusion that, under Michigan law, Auto Club and Allstate would avoid any

liability to McGow, even though McGow paid premiums to Auto Club (for his automobile) and Allstate (for his motorcycle) with the expectation that they would provide UM coverage for his damages. As explained below, the district court, however, erred both in its interpretation of Michigan's insurance law and in its analysis of Georgia's public-policy law.

## 3. Michigan Law

As outlined above, each of the UM policies at issue here is a primary, as opposed to a true excess, coverage policy that covers McGow for damages caused by an uninsured motorist. However, the St. Paul and Allstate policies each contain an "other insurance" clause, which makes their primary UM coverage become excess (i.e., a second layer of primary coverage to be reached only after other primary insurance is exhausted) where UM coverage is provided under another policy. On the other hand, the Auto Club policy contains a pro-rata other-insurance clause and even provides an exclusion from UM coverage where the injury is sustained while the insured, McGow, is occupying a motor vehicle that provides "the same or similar coverage." The net result is competing other-insurance clauses through which all three insurers seek to reduce or eliminate their primary coverage for the insured's UM loss in the event of concurrent coverage.

In a situation of competing other-insurance clauses, the Michigan Supreme

21

Court had to decide whether to view "all 'other insurance' clauses as irreconcilable and prorate[] liability among all insurers, or to adopt the majority rule that endeavors to reconcile the competing clauses if possible." St. Paul Fire & Marine Ins. Co. v. American Home Assurance Co., 444 Mich. 560, 562, 514 N.W.2d 113, 114 (1994).[7] The Michigan Supreme Court adopted the majority rule. See id. at 576-77, 514 N.W.2d at 120. Thus, Michigan law generally attempts to reconcile and give effect to the "other insurance" and "escape" clauses in insurance policies. See id. at 577-78, 514 N.W.2d at 121.

In so doing, Michigan law recognizes three general categories of "other insurance" clauses: (1) a "pro-rata clause, which purports to limit the insurer's liability to a proportionate percentage of all insurance covering the event"; (2) an "escape or no-liability clause, which provides that there shall be no liability if the risk is covered by other insurance"; and (3) an "excess clause, which limits the insurer's liability to the amount of loss in excess of the coverage provided by the other insurance." Id. at 565, 514 N.W.2d at 115 (citing Federal Kemper Ins. Co. v. Health Ins. Administration Co., 424 Mich. 537, 542, 383 N.W.2d 590 (1986)); see

---

[7]In giving effect to other-insurance provisions, the Michigan Supreme Court has emphasized that "insurance is a contract by which one party, for a consideration, assumes particular risks of the other party," that "the parties have the right to employ whatever terms they wish," and that "the courts will not rewrite them as long as the terms do not conflict with pertinent statutes or public policy." St. Paul, 444 Mich. at 564, 514 N.W.2d at 115.

also Pioneer State Mutual Ins. Co. v. TIG Ins. Co., 229 Mich.App. 406, 581 N.W.2d 802, 805 (1998) (discussing same three types of other-insurance clauses). Michigan courts have also recognized that "[a] variety of combinations of the clauses may occur (e.g., pro rata versus excess, pro rata versus escape, excess versus excess) and the courts have developed different rules for resolving these conflicts." Pioneer State, 229 Mich. App. at 411-12, 581 N.W.2d at 805. Michigan's rules attempt "to reconcile the competing provisions by discerning the parties' intent through an analysis of the clauses." Id. at 412, 581 N.W.2d at 805 (quotation marks and citation omitted).

Further, applying Michigan law to each policy here yields these results. First, the Auto Club policy contains a "pro rata" other-insurance clause, providing that it is liable for an insured's damages "in the same proportion that the applicable limit of liability of [its] coverage bears to the sum of all applicable limits of liability that cover the loss." Under Michigan law, an insurer, such as Auto Club, whose policy is primary and includes a pro-rata other-insurance clause, ordinarily would bear primary, initial liability. See St. Paul, 444 Mich. at 573-78, 514 N.W.2d at 119-121. Where multiple pro-rata policies provide coverage, the pro-rata insurers share initial primary liability proportionate to their policy limits. See id.

23

However, under Michigan law, a different result ensues if one primary insurer has a pro-rata other-insurance clause but the other primary insurer has an "excess" other-insurance clause. Under Michigan law, the insurer with a pro-rata other-insurance clause in its policy would be required to compensate an insured's loss up to its policy limits before a primary insurer whose policy includes an excess other-insurance clause would be required to pay at all. St. Paul, 444 Mich. at 573-76, 514 N.W.2d at 119-20. Thus, without its escape clause, Auto Club (with its pro-rata other-insurance clause) would be required to pay McGow damages up to its policy limits before St. Paul and Allstate (with their excess other-insurance clauses) would have to pay under their policies.[8]

But this case has yet another wrinkle that affects the layering of coverage. In addition to its pro-rata other-insurance clause, the Auto Club policy contains an escape clause in its exclusions section. Specifically, the Auto Club policy contains an exclusion for bodily injury sustained by the insured "while occupying a motor

_____

[8]This is the result the Michigan Supreme Court reached in St. Paul, where it "considered competing pro-rata and excess 'other insurance' clauses." 444 Mich. at 573, 514 N.W.2d at 119. The Michigan court stated:

> Courts adopting the majority view have reconciled the pro-rata clause and the excess clause by interpreting the policy containing the excess clause as secondary coverage where there is another insurance policy covering the same risk. . . . The result, under this view, is that the excess insurer is generally liable for the loss only to the extent that the insured's claim exceeds the policy limits of the insurance policy containing the pro-rata 'other insurance' clause.

Id. (internal citation omitted).

vehicle which provides the same or similar coverage for" the insured. Unlike other-insurance clauses, which instruct "how to apportion the dollars when two or more policies apply to the same covered act," such an exclusion under Michigan law provides for <u>no</u> coverage under the specified circumstances, and "there is nothing to 'apportion' between the [] carriers." <u>American States Ins. Co. v. Kesten</u>, 221 Mich.App. 330, 333, n.2, 561 N.W.2d 486, 488 n.2. Thus, because McGow (the insured) sustained the injuries while occupying a motor vehicle (the Expedition) that has "the same or similar coverage" (the St. Paul UM coverage), the Auto Club policy's escape clause is triggered and, under Michigan law, the Auto Club policy provides <u>no coverage</u>, primary or otherwise, to McGow for his injuries.[9]

---

[9]In <u>American States Ins. Co. v. Kesten</u>, 221 Mich.App. 330, 561 N.W.2d 486, the Michigan appeals court interpreted an identical Auto Club exclusion and concluded that there was no UM coverage because of the exclusion, despite the existence of a pro-rata other-insurance clause in Auto Club's policy. In doing so, that court interpreted the requirement of "same or similar" coverage in Auto Club's policy to mean other UM coverage. <u>Id.</u> at 333, 561 N.W.2d at 487-88. Auto Club's UM policy had a $20,000 limit of liability and the other insurer, American States Insurance Company ("American"), had a $100,000 limit of liability. American argued that Auto Club's exclusion did not apply because American's coverage of $100,000 was not the same or similar to Auto Club's coverage of $20,000. The Michigan court rejected American's argument, concluding: "[T]he language under 'Exclusions' is plain that if 'you' (the insured) are a passenger in a car, as here, that has UM coverage–and this UM coverage covers you, then ACIA's UM coverage does not cover you. There is nothing about this exclusion that is ambiguous. To the contrary, the exclusion is clear, concise, and specific." <u>Id</u>.

Thus, even though the Auto Club policy provides primary, pro-rata coverage while the St. Paul policy provides primary coverage subject to an excess clause, the St. Paul policy nevertheless provides "same or similar" (i.e., UM) coverage under Michigan law. The parties do not argue otherwise.

25

In contrast to Auto Club, the Allstate and St. Paul policies both contain excess other-insurance clauses and no escape clause. Thus, the Allstate and St. Paul policies provide primary UM coverage with competing excess other-insurance clauses. We first examine how both excess other-insurance clauses are triggered as to McGow's damages and then how Michigan law reconciles and enforces competing excess other-insurance clauses.

As outlined above, the Allstate policy's other-insurance clause provides that "[i]f the insured person [McGow] was in . . . a vehicle you [McGow] do not own, which is insured for this coverage under another policy, this coverage will be excess." Thus, Allstate's excess other-insurance clause was triggered because McGow was in a vehicle that he did not own (the Expedition) and that is insured for UM coverage under another policy (the St. Paul policy).

Similarly, the St. Paul policy's other-insurance clause provides, in relevant part: "This agreement provides primary insurance for covered autos the named insured owns and excess insurance for those the named insured doesn't own." Thus, St. Paul's excess other-insurance clause was triggered because the Expedition was a covered auto the named insured (Cosworth) did not own. Accordingly, St. Paul and Allstate have competing excess other-insurance clauses.

The Michigan courts have expressly addressed how to reconcile competing

26

excess other-insurance clauses. While Michigan law attempts to enforce excess other-insurance clauses, forming a second coverage layer behind primary pro-rata coverage, it nevertheless recognizes that excess other-insurance clauses in primary auto policies do not alter the basic nature of the policies as primary automobile policies. See Bosco v. Bauermeister, 456 Mich. 279, 291-92, 571 N.W.2d 509, 514 (1997) (distinguishing between "true excess" policies, which provide only for excess coverage, and primary policies that become excess only under "other insurance" clauses, and concluding that the latter's basic nature as a primary policy does not change). Thus, under Michigan law, where no other primary insurance is available, primary policies with excess other-insurance provisions will bear primary liability on a pro-rata basis, apportioned on the basis of the policy limits. See Pioneer State, 229 Mich.App. at 414-16, 581 N.W.2d at 806-07 (noting that "an arguable literal interpretation that would deny any insurance coverage in the face of competing 'excess' clauses would be absurd," and, where there were two "'mutually repugnant' 'excess' clauses," apportioning coverage on the basis of the policy limits).

Because in this case there is no other primary insurance due to Auto Club's escape clause, Allstate and St. Paul continue to bear primary liability, notwithstanding their excess other-insurance clauses, apportioned according to

their coverage limits.  See id.  In sum, under Michigan law, Auto Club has no

liability for McGow's damages under its policy and St. Paul and Allstate bear

primary liability, apportioned according to their coverage limits.[10]

4.  Georgia Public Policy

---

[10]The district court erroneously concluded that St. Paul's other-insurance provision was a pro rata, as opposed to an excess, provision under Michigan law.  The district court's error apparently arises from its reading of the St. Paul policy's provision entitled "Insurance written with another company," which directly follows the other-insurance clause.  Those clauses state:

> **Other Insurance**
> This agreement provides primary insurance for covered autos the named insured owns and excess insurance for those the named insured doesn't own.  Excess insurance applies after other collectible insured motorists insurance has been used up.
> **Insurance written with another company**.  When this agreement and other collectible uninsured motorists insurance apply to an uninsured motorists loss on the same primary or excess basis, we'll pay that portion of the loss equal to what our limit of coverage bears to the total available limits.

Because the language in the second clause, "Insurance written with another company," recognizes that St. Paul will pay pro rata, the district court concluded that St. Paul had a pro-rata other-insurance clause and not an excess other-insurance clause under Michigan law and that under Michigan law, only St. Paul, and not Allstate and Auto Club, would be liable.  Because of this result under Michigan law, the district court applied Georgia law.

However, the district court misinterpreted St. Paul's policy and Michigan law.  The first clause – St. Paul's other-insurance clause – clearly states that it provides excess coverage, if the auto is not owned by the insured and other insurance applies.  The second clause – St. Paul's "Insurance written with another company" clause – then provides that its liability will be pro rata with other excess-liability insurers.  This pro-rata provision does not negate the first excess clause; it simply recognizes the Michigan law that would apply anyway – that where two policies both provide primary coverage with an excess other-insurance clause, their liability is pro rata to the extent the insured's losses exceed any first-layer, primary coverage limits.  See Pioneer State, 229 Mich.App. at 415-16, 581 N.W.2d at 806-07.  Thus, Allstate and St. Paul both are primary policies with excess other-insurance clauses.

28

The district court applied Georgia law because it concluded that the result under Michigan law would be to allow insurers (Allstate and Auto Club) that accepted premiums from McGow to escape liability, and that this result would contravene Georgia's public policy. First, as established above, Allstate, along with St. Paul, bears primary liability under Michigan law, and only Auto Club escapes liability under its exclusion. Second, and more importantly, this result under Michigan law does not contravene Georgia's public policy.

We acknowledge that Georgia has a strong interest in ensuring that its drivers who have UM coverage are compensated for damages caused by uninsured drivers. The application of Michigan law will not deprive Plaintiff McGow of compensation for his injuries; it will simply affect which insurance company pays McGow. We recognize that Georgia courts have devised rules applicable to competing other-insurance clauses that they think will best provide UM coverage. Nonetheless, that choice is better described as a <u>rule</u> than as a "public policy" that is contravened by applying Michigan's different rules for reconciling competing insurance clauses.

Indeed, Georgia courts have repeatedly held that another state's law can be enforced to give effect to a provision of a UM policy even though the provision would not be enforceable under Georgia law. <u>See, e.g.</u>, <u>Dacosta v. Allstate Ins.</u>

29

Co., 188 Ga.App. 10, 372 S.E.2d 7, 8 (1988) (applying Tennessee law to allow Allstate to offset workers' compensation benefits received by the insured against the amount of uninsured-motorist benefits otherwise due, even though Georgia law did not provide for such offset); Nationwide Gen. Ins. Co. v. Parnham, 182 Ga. App. 823, 357 S.E.2d 139, 142 (1987) (discerning "no prejudice to the public interest in Georgia" in applying Texas law to enforce self-insurer-exclusion provision in Texas insurance policy, even assuming such an exclusion would be disfavored under Georgia law); Terry v. Mays, 161 Ga. App. 328, 329, 291 S.E.2d 44, 45 (1982) (applying South Carolina law to enforce exclusion of coverage for settlement without the consent of the insurer, even though such an exclusion has been held "repugnant" to the Georgia uninsured motorist statute). In so holding, the Georgia Court of Appeals has repeatedly stated the following with regard to the refusal to enforce a provision of an insurance policy as contrary to public policy:

> Enforcement of a contract or a contract provision which is valid by the law governing the contract will not be denied on the ground of public policy, unless a 'strong case' for such action is presented; mere dissimilarity of law is not sufficient for application of the public policy doctrine. A contract is not necessarily contrary to the public policy of a state merely because it could not validly have been made there, notwithstanding the making of such contracts in the place of the forum is expressly prohibited by statute.

Terry, 161 Ga.App. at 329, 291 S.E.2d at 45 (quotation marks and citation omitted). Under this standard, the application of Michigan law here would not

30

contravene Georgia's public policy.[11]

The district court concluded, and St. Paul argues, that Georgia has a strong interest in forcing insurers, such as Auto Club, who received premiums for providing UM coverage to the insured to provide such coverage. That argument ignores the fact that part of the bargained-for contract included an unambiguous escape clause regarding Auto Club's liability if the insured, McGow, was occupying a motor vehicle that had the same or similar coverage. At the time of the accident, McGow was not in his own vehicle but was a passenger in the Expedition insured by St. Paul. We find nothing in Georgia's public policy that is contravened when McGow is covered by the UM insurance on the vehicle in which

---

[11]We recognize that the Georgia Court of Appeals did not apply Michigan law in National General Insurance Co. v. United Services Automobile Ass'n, 224 Ga.App. 821, 482 S.E.2d 727 (1997), which involved the question of which of two UM policies was primarily liable for damages of an injured passenger in a car accident in Georgia. A UM policy issued and delivered to the driver in Georgia covered the injured passenger's damages. The injured passenger had a UM policy issued and delivered in Michigan. The Georgia court stated that the contracts' terms did not resolve the issue of which insurer was initially liable. It further stated that it had reviewed the Michigan authority cited by the Michigan insurer and found "that it fails to address the issue of which carrier is primarily obligated to provide uninsured motorist coverage when the insured may have coverage through two or more uninsured motorist carriers." Id. at 824, 482 S.E.2d at 729. The Georgia court's declining to interpret the Michigan policy under Michigan law thus was based on its determination that Michigan law did not answer the question, not on any determination that application of Michigan law would violate public policy.

Further, National General differs from this case in two crucial respects: (1) in this case, all three policies were issued and delivered in Michigan with an expectation that their policies, including their other-insurance provisions, would be interpreted under Michigan law; and (2) the Michigan authority upon which we rely is clear in addressing which insurer is primarily liable. Thus, the reasons that the National General court did not apply Michigan law do not apply here. Here, all parties had an expectation that Michigan law would govern their policies, and those policies, interpreted under Michigan law, compel the result we reach today.

31

he was a passenger.

Furthermore, St. Paul's argument might be more compelling with regard to insurers providing insurance pursuant to Georgia contracts. However, Allstate and Auto Club issued and delivered policies in Michigan with an expectation that Michigan law would be applied to enforce the terms of those contracts. Accordingly, to apply Georgia law instead would effectively require Allstate and Auto Club to provide insurance other than what they contracted for, not simply require them to provide the insurance for which they received premiums. Given that McGow was a passenger in a vehicle insured by St. Paul and that McGow is clearly covered under St. Paul's policy, Georgia has no compelling interest in requiring insurers in Auto Club's position to provide insurance beyond the terms of their policies, which are valid under the Michigan law governing them. The district court thus erred in applying Georgia law.[12]

### III. CONCLUSION

For the reasons explained above, we affirm the district court's denial of Auto

---

[12]Allstate and Auto Club also argue that the application of Georgia law deprives them of their due-process rights by altering their contractual rights. See Terry, 161 Ga. App. at 329-30, 291 S.E.2d at 45-46; see also Smith v. Prudential Prop. & Cas. Ins. Co., 236 Ga.App. 188, 511 S.E.2d 282 (1999) (applying New York law and affirming summary judgment for insurer based on exclusion in New York insurance policy because applying the Georgia law "to the policy issued in New York pursuant to New York law and New York insurance rates would unfairly deprive the insurance company of the degree of certainty necessary for determining the cost and extent of coverage"). Because we conclude that the district court erred in applying Georgia law, we need not reach this issue.

Club's motion to dismiss, but we reverse the grant of summary judgment to St. Paul and the denial of summary judgment to Auto Club. We affirm the denial of summary judgment to Allstate. We also remand this case for further proceedings consistent with this opinion. On remand, in accordance with Michigan law, the district court should grant summary judgment to Auto Club based on its escape clause and then should apportion liability for McGow's damages pro rata between St. Paul and Allstate, in proportion to their coverage limits.

**REVERSED IN PART, AFFIRMED IN PART, AND REMANDED**.