711 So.2d 84 (1998)
ALLSTATE INSURANCE COMPANY, Appellant,
v.
TIG INSURANCE COMPANY, f/k/a Transamerica Insurance Company, Appellee.
No. 97-2059.
District Court of Appeal of Florida, First District.
April 15, 1998.
Rehearing Denied May 29, 1998.
R. Matthew Miles, Jr. and Jeffrey K. Green of Miles & Green, Daytona Beach, for Appellant.
Dana G. Bradford, II and David S. Brecher of Baumer, Bradford & Walters, P.A., Jacksonville, for Appellee.
*85 LAWRENCE, Judge.
Allstate Insurance Company (Allstate) appeals from a judgment of the trial court requiring TIG Insurance Company (TIG) and Allstate to share equally in certain damages recovered for injuries sustained in a jet ski accident.
Richard Hall (Hall) rented a jet ski from Suzuki of Orange Park (Suzuki) on September 19, 1993. Scott Shubert (Shubert), a passenger on the jet ski operated by Hall, was severely injured when he fell from the jet ski into the path of another watercraft. Shubert and his wife filed suit against Hall and Suzuki for damages arising out of Shubert's injuries.
At the time of the accident, Allstate provided homeowner's liability coverage to Hall, with limits of $100,000 per occurrence. TIG provided liability insurance coverage to Suzuki, with limits of $500,000 per occurrence. The TIG policy also provided liability coverage to Hall as a permissive user of Suzuki's watercraft.
The Shuberts settled with Hall for $50,000. Allstate and TIG each paid one-half of the settlement agreement, and reserved the right to have the trial court determine the shares owed by each carrier towards the total amount of the settlement. The trial judge found that both the Allstate policy and the TIG policy contained provisions stating that each policy was in excess over the other. Based on this finding, the trial judge held that each policy must provide primary coverage for Hall. We agree with that portion of the trial judge's ruling. See The Travelers Insurance Company v. Lexington Insurance Company, 478 So.2d 363, 365 (Fla. 5th DCA 1985) (explaining that "[i]n Florida, where two insurance policies contain excess insurance clauses the clauses are deemed mutually repugnant and both insurers become primary and share the loss on a pro rata basis in accordance with their policy limits."). The trial judge further held that Allstate and TIG would share the loss in equal shares. We disagree with the method of sharing imposed by the trial court and reverse on this issue.
The Florida Supreme Court, in Allstate Insurance Company v. Executive Car and Truck Leasing, Inc., 494 So.2d 487, 489 (Fla.1986), held that where two insurance policies contain "other insurance" clauses stating that each policy will be excess over other collectible insurance, "[t]he `other insurance' clauses in the respective policies cancel each other out," and the policies of the two insurers must be apportioned on a pro rata basis "determined by the policy limits in relation to the loss." In the instant case, however, the TIG policy contained a "method of sharing" provision which stated:
c. Method of Sharing
If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.
Allstate's policy is silent with regard to sharing among primary insurers. The trial judge reasoned that the Allstate policy permitted sharing by equal shares because it did not expressly prohibit such sharing. The term "permits," however, is susceptible of more than one meaning and may also be defined as "to consent to expressly or formally." Webster's Third New International Dictionary Of The English Language Unabridged 1638 (1981). Ambiguous terms in insurance contracts must be construed against the drafter.[1] The term "permits," therefore, must be construed against TIG to mean "to consent to expressly or formally" rather than "does not prohibit." Since the Allstate policy is silent and therefore does not expressly or formally consent to equal sharing with TIG or any other primary insurer, the equal sharing provision of the TIG policy has no effect. Thus, coverage must be pro-rated according to each insurer's percentage of total available coverage, consistent with the rule announced in Allstate.
*86 We further hold that any attempt to impose a method of sharing on a nonconsenting carrier, unambiguous or otherwise, is unenforceable. One insurance company may not attempt to rewrite the policy of another insurance company. Requiring co-primary insurers to provide coverage in equal shares in the absence of the consent of all carriers involved would allow a company like TIG in the instant case to charge premiums corresponding to 5/6ths of the total liability coverage, but be liable for only 3/6ths or one-half of the total damages.
We reverse and remand on the sole issue of apportionment or method of sharing between the insurers, with instructions that Allstate and TIG be required to share liability on a pro-rata basis, determined by the policy limits in relation to the loss.
REVERSED in part, AFFIRMED in part, and REMANDED for consistent proceedings.
BARFIELD, C.J., and WOLF, J., concur.
NOTES
[1] "`[I]t is a rule common to the construction of all written instruments that it is to be taken, in cases of doubtful meaning, against the draftsman.'" New York Life Ins. Co. v. Kincaid, 136 Fla. 120, 186 So. 675, 678 (1939) (quoting Brownstein v. New York Life Ins. Co., 158 Md. 51, 148 A. 273 (1930)).