**AIG PREMIER INSURANCE COMPANY, Plaintiff,**

v.

**RLI INSURANCE COMPANY, Defendant.**

**Case No. 6:10–cv–712–Orl–22KRS.**

United States District Court, M.D. Florida, Orlando Division.

Sept. 15, 2011.

Philip Glatzer, Aaron Leviten, Marlow Connell Abrams Adler Newman & Lewis, Coral Gables, FL, for Plaintiff.

Sina Bahadoran, Eric A. Hiller, Hinshaw & Culbertson, LLP, Miami, FL, for Defendant.

### ORDER

ANNE C. CONWAY, District Judge.

This cause comes before the Court for consideration of Plaintiff AIG Premier Insurance Company's ("AIG") Amended Mo-

tion for Summary Judgment (Doc. No. 37) and Defendant RLI Insurance Company's ("RLI") Cross–Motion for Summary Judgment. (Doc. No. 38.) RLI opposes AIG's motion (Doc. No. 38) and AIG opposes RLI's cross-motion. (Doc. No. 45.) RLI filed a Reply (Doc. No. 52) and a Sur–Reply (Doc. No. 56) in support of its Cross–Motion, and AIG filed a Response to RLI's Sur–Reply. (Doc. No. 57.) For the reasons set forth below, the Court will grant RLI's Cross–Motion for Summary Judgment and deny AIG's Motion for Summary Judgment.

## I. BACKGROUND

This is a declaratory judgment action arising out of an insurance coverage dispute. The parties do not dispute the following facts. Scott Philip Johnson filed a Complaint in the Circuit Court of Volusia County, Florida seeking damages for bodily injuries suffered when his motorcycle collided with a vehicle operated by Kenneth Johnson. (Doc. No. 21 ¶ 5; Doc. No. 25 ¶ 1.) At the time of the accident, Kenneth Johnson maintained a primary automobile liability insurance policy issued by Geico, which provided bodily injury liability limits of $300,000.00. (Doc. No. 21 ¶ 6; Doc. No. 25 ¶ 2.) Additionally, Kenneth Johnson maintained (1) a "Personal Umbrella Liability Policy" issued by RLI (the "RLI Policy"), which provided $1,000,000.00 of coverage in excess of the underlying automobile policy limits and (2) a "Group Personal Umbrella" policy issued by AIG to the Partners and Principals of PricewaterhouseCoopers, LLP (the "AIG Policy"), which provided $5,000,000.00 of coverage in excess of the underlying automobile policy limits.[1] (Doc. No. 21 ¶¶ 7, 9; Doc. No. 25 ¶¶ 4, 5). The underlying lawsuit by Scott Phillip Johnson settled for $750,000.00, and Geico tendered its

$300,000.00 policy limit. (Doc. No. 21 ¶ 14; Doc. No. 25 ¶ 11.) Pursuant to the terms of a settlement agreement, RLI funded the remaining $450,000.00 and reserved its right to seek partial reimbursement from AIG. (Doc. No. 21 ¶ 14; Doc. No. 25 ¶ 11.)

■ Both the AIG Policy and RLI Policy are denominated "Umbrella Policies" and contain excess "other insurance" clauses. (Doc. Nos. 31–1 & 39–2.) AIG filed a Second Amended Complaint for Declaratory Relief to obtain a judgment declaring that AIG has no duty to contribute any coverage and thus no duty to reimburse RLI. (Doc. No. 21.) In its counterclaim for declaratory relief, RLI seeks a judgment declaring that the RLI and AIG policies are "mutually repugnant" and must contribute on a *pro rata* basis according to their respective policy limits, such that AIG must reimburse RLI in the amount of $375,000.00. (Doc. No. 25.) Alternatively, in its sur-reply RLI argues that under Florida law the mutual repugnancy rule does not apply and its policy should provide coverage only after AIG's policy limits are exhausted. (Doc. No. 56.) The "mutual repugnancy" rule is summarized as follows:

Where there is no incompatibility among other insurance provisions, they are to be enforced by their terms. Difficulties arise when two policies contain the same other insurance provision. For example, where two policies both have excess clauses, there is no direct way to determine which should be treated as excess simply by reference to the policies. In such cases, each policy provides that it does not attach until the other policy has paid its limits. If a court were to give literal effect to each of the excess clauses, each policy would be cancelled out and the final result

---

1. The named insured of the AIG Policy is Price Waterhouse Coopers, L.L.P. (Doc. No. 31–1.) Kenneth Johnson is an "Additional Insured." (Doc. No. 39–3.)

would depend upon which policy was read first.

Courts have, therefore, developed what is known as the rule of mutual repugnancy. Under that rule, where two policies cover the same occurrence and both contain other insurance clauses, the excess insurance provisions are mutually repugnant and must be disregarded. Each insurer is then liable for a pro rata share of the settlement or judgment. *Twin City Fire Ins. Co. v. Fireman's Fund Ins. Co.*, 386 F.Supp.2d 1272, 1278 (S.D.Fla.2005) (citations and quotations omitted). Therefore, the Court must determine whether the AIG and RLI policies are mutually repugnant, such that RLI and AIG must fund the remaining $450,000.00 on a pro rata basis, or whether either the RLI or AIG policy must be exhausted first.

## II. SUMMARY JUDGMENT STANDARD

 Before the court grants summary judgment, the movant must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). The Court draws all inferences from the evidence in the light most favorable to the non-movant and resolves all reasonable doubt in the non-movant's favor. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir.2006). This standard is not changed by cross motions for summary judgment. *See Ernie Haire Ford, Inc. v. Universal Underwriters Ins. Co.*, 541 F.Supp.2d 1295, 1297 (M.D.Fla.2008) (citations and quotations omitted). Finally, "[s]ummary judgment is appropriate in declaratory judgment actions seeking a declaration of coverage when the insurer's duty, if any, rests solely on the applicabili-

ty of the insurance policy, the construction and effect of which is a matter of law." *Id.*

## III. ANALYSIS

### A. Choice of Law

 The parties dispute whether the court should apply Florida law or New York law to resolve this issue.[2] A federal court sitting in diversity applies the choice of law rules of the forum state. *Rando v. Govt. Emps. Ins. Co.*, 556 F.3d 1173, 1176 (11th Cir.2009) (quoting *McGow v. McCurry*, 412 F.3d 1207, 1217 (11th Cir.2005)). In Florida, the *lex loci contractus* choice-of-law rule determines the law governing an insurance contract. *Id.* (quoting *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So.2d 1160, 1163 (Fla.2006)). Pursuant to this rule, "the law of the jurisdiction where the contract was executed governs the rights and liabilities of the parties in determining an issue of insurance coverage." *Id.* "When the contract deals with an insurance policy, the *locus contractus* is generally the state where the insured executed the insurance application." *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1060 (11th Cir.2007). The delivery of the policy can constitute the "last act" necessary to execute a contract. *See, e.g., Bloch v. Berkshire Ins. Co.*, 585 So.2d 1137, 1138 (Fla. 3d DCA 1991) ("As to the choice of law issue, we agree with the trial court that this insurance contract, which was delivered to [plaintiff] in New York where he then resided, was regulated by New York, rather than Florida, law."). However, "[t]he determination of where a contract was executed is fact-intensive, and requires a determination of 'where the last act necessary to complete the contract [wa]s done.'" *Prime Ins. Syndicate, Inc. v. B.J. Handley Trucking, Inc.*, 363 F.3d 1089, 1092–93 (11th Cir.2004) (quoting

---

2. Neither policy contains a choice of law provision.

*Pastor v. Union Cent. Life Ins. Co.,* 184 F.Supp.2d 1301, 1305 (S.D.Fla.2002)) (upholding the district court's conclusion that the communication of an oral binder constituted the acceptance of an offer to purchase insurance and therefore was the last act necessary to complete the contract).

RLI contends that the last act to execute both the RLI Policy and the AIG Policy occurred in Florida. (Doc. No. 38 p. 4.) Conversely, AIG contends that New York law governs the AIG Policy. (Doc. No. 37 p. 6.) AIG does not argue that New York law governs the interpretation of the RLI Policy. Instead, AIG argues that RLI does not establish that its policy was executed in Florida. (Doc. No. 45 p. 19.)

### 1. The AIG Policy

■ AIG submits the affidavit of Anna Brusco, an AIG policy underwriter, who avers that the AIG Policy "was issued and delivered in New York to named insured, Price Waterhouse Coopers, L.L.P." and that the binder for the AIG Policy "was issued in the state of New York prior to issuance of the final version of the policy, which ... was also issued in New York." (Doc. Nos. 32 & 44.) Thus, the affidavit establishes that the "last act" necessary to execute the AIG Policy occurred in New York. As discussed below, the arguments advanced by RLI to establish Florida as the place of execution of the AIG Policy are not persuasive.

■ RLI primarily relies on the affidavit of Kenneth Johnson as evidence that the AIG Policy was delivered in Florida. Kenneth Johnson avers that the "Certificate of Insurance Declarations for the AIG policy was delivered to me at my permanent address in Florida." (Doc. No. 50–1

¶ 6.) However, "[i]t is well-settled that a certificate of insurance is not part of an insurance contract" and thus does not bear on the court's choice of law determination.[3] *Bailey v. Netherlands Ins. Co.,* 615 F.Supp.2d 1332, 1336–37 (M.D.Fla.2009) (citing *Boseman v. Conn. Gen. Life Ins. Co.,* 301 U.S. 196, 203, 57 S.Ct. 686, 81 L.Ed. 1036 (1937)). Therefore, Kenneth Johnson's affidavit does not establish Florida as the state in which the "last act" occurred because delivery of the certificate is not legally dispositive.[4]

RLI also argues the "last act" occurred in Florida because the AIG Policy required Kenneth Johnson to procure underlying personal automobile insurance, and he obtained it through Geico in Florida. (Doc. No. 38 p. 22.) For support, RLI relies on *Fioretti v. Mass. Gen. Life Ins. Co,* in which the Eleventh Circuit reasoned that the insured's execution of a Statement of Good Health constituted the "last act" necessary to complete a life insurance policy. 53 F.3d 1228, 1236 (11th Cir.1995). However, the insurance company expressly conditioned its approval of the insured's application on the execution of the Statement of Good Health, and the parties mutually agreed that it constituted the last act. *Id.* While the AIG Policy required underlying limits, RLI does not demonstrate, legally or factually, that Kenneth Johnson's procurement of the Geico Policy constituted the "last act."

■ Additionally, RLI contends that the rigid application of the *lex loci contractus* doctrine does not effectively address group insurance policies, which "present unique issues because of the fact that certificates of insurance are often issued to numerous

---

3. Furthermore, the AIG "Certificate of Insurance Declarations" states the following: *"THIS IS NOT A POLICY.* THIS DOCUMENT PROVIDES EVIDENCE OF COVERAGE ONLY." (Doc. No. 50–1 p. 3.)

4. Additionally, RLI does not provide support for its argument that AIG's electronic delivery of its policy to Kenneth Johnson in Florida establishes the "last act." (*See* Doc. No. 38 pp. 21–22.)

insureds who often reside in different states." (Doc. No. 38 p. 23.) RLI proposes that the court apply the "significant relationship test" instead. *(Id.* at p. 25.) However, a court departs from the *lex loci contractus* doctrine in favor of the significant relationship test only if a narrow "public policy exception" applies. *Roach,* 945 So.2d at 1165. "[The public policy exception] requires *both* a Florida citizen in need of protection *and* a paramount Florida public policy." *Id.* (emphasis in original). While RLI argues that the application of the significant relationship test to group insurance contracts would be "more reasonable," it does not identify a paramount Florida public policy at issue. (Doc. No. 38 p. 25.) Therefore, the AIG Policy is governed by New York law.

### 2. The RLI Policy

 Similarly, Kenneth Johnson's affidavit demonstrates that the RLI Policy was executed in Florida.[5] Without evidence to the contrary, AIG argues that (1) RLI does not establish Florida as the state where the binder was issued; (2) RLI is an Illinois corporation; and (3) the brokering agent for Kenneth Johnson's policy was located in Virginia. (Doc. No. 45 pp. 19–20.) However, AIG's arguments do not overcome RLI's evidence that the "last act" occurred when it delivered its policy to Kenneth Johnson in Florida. Therefore, Florida law governs the RLI Policy.

### B. False Conflict

 Despite the fact that New York law governs the AIG Policy and Florida law governs the RLI Policy, if no conflict exists between two bodies of law the court does not need to make a choice of law determination. *See Scott v. Prudential Sec., Inc.,* 141 F.3d 1007, 1012 (11th Cir.1998). "A conflict of law exists

when two or more states have legitimate interests in a particular set of facts in litigation, and the laws of those states differ or would produce different results in the case." *Walker v. Paradise Grand Hotel, Ltd.,* No. 01–3564, 2003 WL 21361662, at *1 (S.D.Fla. Apr. 25, 2003) (citing *Fioretti,* 53 F.3d at 1234). "A 'false conflict' exists where the laws of the interested jurisdictions are (1) the same; (2) different but would produce the same outcome under the facts of the case; or, (3) when the policies of one jurisdiction would be furthered by the application of its laws while the policies of the other jurisdiction would not be advanced by the application of its laws." *Chapman v. DePuy Orthopedics, Inc.,* 760 F.Supp.2d 1310, 1313 n. 3 (M.D.Fla.2011) (citing *Tune v. Philip Morris Inc.,* 766 So.2d 350, 352 (Fla. 2d DCA 2000)).

 In both Florida and New York, where two insurance policies covering the same loss contain "other insurance" clauses stating that the policy will be excess over other collectible insurance, the "other insurance" clauses cancel each other out and each company must share in the cost of the settlement on a pro rata basis. *See Allstate Ins. Co. v. Exec. Car & Truck Leasing, Inc.,* 494 So.2d 487, 489 (Fla. 1986); *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.,* 51 N.Y.2d 651, 435 N.Y.S.2d 953, 417 N.E.2d 66, 68 (1980). In New York, however, the ratable contribution rule does not apply if "its use would effectively deny and clearly distort the plain meaning of the terms of the policies." *Lumbermens,* 435 N.Y.S.2d 953, 417 N.E.2d at 68. In Florida, courts have not explicitly recognized this exception. *See, e.g., Am. Cas. Co. of Reading Penn. v. Health Care Indemn., Inc.,* 613 F.Supp.2d 1310, 1319 (M.D.Fla.2009) ("To this Court's

---

5. Kenneth Johnson avers that RLI issued and delivered its policy to him at his permanent residence in Florida. (Doc. No. 31 ¶ 2); (Doc. No. 50–1 ¶ 7.)

knowledge, Florida law does not recognize a 'super excess' other insurance clause.").

According to AIG, under both Florida and New York law, the language of its "other insurance" clause indicates that its policy is excess to other excess policies, such that the AIG and RLI policies are not mutually repugnant and RLI must exhaust its policy limits before AIG contributes to the settlement amount. The "other insurance" clause of the AIG Policy provides that

> If other valid and collectible insurance applies to a loss that is also covered by this Policy, and subject to the Limits of Insurance Section of this Policy, this Policy shall apply **excess of other insurance, whether this other insurance is primary, excess, contingent, or issued on any other basis.** This provision, however, shall not apply if the other insurance is specifically written to be in excess of this Policy.

(Doc. No. 39–2 p. 31) (emphasis added). RLI argues that by applying Florida or New York law, the Court should find that either (1) the competing "other insurance" clauses are mutually repugnant or (2) the language of RLI's "other insurance" clause renders its policy "super excess" to the AIG Policy.[6] The "other insurance" clause of the RLI Policy states that

> There may be other collectible insurance, in addition to the Basic Policies, covering a claim which is also covered by this policy. If this occurs, the other insurance will pay first and this policy

will respond **in excess of, and not contribute with, the other insurance.**[7]

(Doc. No. 31–1 p. 13) (emphasis added). As discussed below, pursuant to either Florida or New York law, the "other insurance" clauses are mutually repugnant and the parties are liable for a pro rata share of the settlement determined by the policy limits in relation to the loss.

### C. New York Law

In New York, the rule of ratable contribution does not apply if "its use would effectively deny and clearly distort the plain meaning of the terms of the policies of insurance." *Lumbermens,* 435 N.Y.S.2d 953, 417 N.E.2d at 68. "Whether there will be such distortion turns on consideration of the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it, as well as upon the wording of its provision concerning excess insurance." *State Farm Fire & Cas. Co. v. LiMauro,* 65 N.Y.2d 369, 492 N.Y.S.2d 534, 482 N.E.2d 13, 17 (1985) (citations omitted). In sum,

> an insurance policy which purports to be excess coverage but contemplates contribution with other excess policies or does not by the language used negate that possibility must contribute ratably with a similar policy, but must be exhausted before a policy which expressly negates contribution with other carriers, or otherwise manifests that it is intended to be excess over the other excess policies. Indicative of such intent, though not

reached applying New York law. (Doc. No. 56.)

---

**6.** In its cross-motion and reply, RLI argues that in Florida and New York, courts would not depart from the ratable contribution rule on these facts. (Doc. Nos. 38 & 52.) Alternatively, in its sur-reply RLI argues that in *Aetna Casualty and Surety Co. v. Beane,* 385 So.2d 1087 (Fla. 4th DCA 1980), a Florida court departed from the mutual repugnancy rule in a manner indicating that the RLI Policy would be "super excess" to the AIG Policy—a conclusion which RLI contends would also be

**7.** The RLI Policy defines "Basic Policies" as "policies listed in the Declarations (including renewals, temporary replacements for non-owned Automobiles, or endorsements) which provides primary liability coverage. A Basic Policy does not mean a commercial general liability policy." (Doc. No. 31–1 p. 5.)

conclusive, may be the fact that a policy is issued as "umbrella" or "catastrophe" coverage, at rates which reflect the reduced risk insured. *Id.*, 492 N.Y.S.2d 534, 482 N.E.2d at 18 (citations omitted). For the reasons set forth below, neither party demonstrates that the ratable contribution rule would "clearly distort" the terms of its policy.[8] *Lumbermens*, 435 N.Y.S.2d 953, 417 N.E.2d at 68.

First, neither "other insurance" clause expressly contemplates that another policy could provide coverage in excess of its coverage.[9] *See Lumbermens*, 435 N.Y.S.2d 953, 417 N.E.2d at 68 (finding a policy that provided it would not contribute with other collectible insurance, "other than insurance applying as excess to [the policy's] limit of liability," conceded the possibility that another could provide excess coverage in excess of its coverage). Second, both "other insurance" clauses either "expressly negate contribution with other carriers, or otherwise manifest [an intent] to be excess over the other excess policies." *LiMauro*, 492 N.Y.S.2d 534, 482 N.E.2d at 18. For example, the AIG policy provides that it is excess "over other collectible insurance, whether primary, excess or contingent." *See Am. Transit Ins. Co. v. Cont'l Cas. Ins. Co.*, 215 A.D.2d 342, 625 N.Y.S.2d 653, 654 (2d Dep't.1995) (determining that the phrase "excess over any other collectible insurance, whether primary, excess or con-tingent" negated contribution and manifested an intention to be excess over any other excess insurance). Similarly, the RLI Policy provides that it shall respond "in excess of, and shall not contribute with, the other insurance." *See LiMauro*, 492 N.Y.S.2d 534, 482 N.E.2d at 19 ("By specifically providing that as to a loss covered by it and by other insurance it was to be excess over, and not contribute with, the other insurance ... the [ ] policy negated any intention to contribute with other policies ....").

AIG argues that because the mutual repugnancy rule applies where two policies "*generally*" purport to be excess to the other," it should not take effect because the "other insurance clause" in AIG's policy *specifically* declares it is excess over other excess coverage—as opposed to the "other insurance" clause in RLI's policy which only *generally* purports to be excess over all other excess policies. (Doc. No. 45 p. 8.) However, the New York Court of Appeals has "rejected as an exercise in 'meaningless semantics' the efforts to determine which among policies covering the risk which occurred is the more specific." *LiMauro*, 492 N.Y.S.2d 534, 482 N.E.2d at 16 (citations omitted). For example, in *LiMauro* the court declined to distinguish between an "other insurance" clause describing a policy as excess to "other collectible insurance" from an "other insurance" clause specifying that it was excess

8. In its cross-motion, RLI asks the court to strike a portion of the affidavit of Maureen Hackett, an underwriter who avers that the AIG Policy was drafted to be excess over other excess insurance, because she testified to having no personal knowledge regarding the policy drafter's intent and because insurance policies should be construed pursuant to their plain meaning. (Doc. No. 38 pp. 14–16.) AIG does not dispute that Hackett's affidavit may be incompetent summary judgment evidence, but argues that it is entitled to summary judgment in its favor despite the affidavit. (Doc. No. 45 p. 8.) Because the court did not rely on the affidavit in reaching its conclusion, it will not address RLI's requested relief.

9. While the "other insurance" clause of the AIG Policy provides that it "shall not apply if the other insurance is *specifically* written to be in excess of this Policy," this language refers to "a higher-level policy that specifically designates the subject policy as underlying insurance." *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 53 A.D.3d 140, 855 N.Y.S.2d 459, 469 (1st Dep't 2008).

to other valid insurance, "whether primary, excess or contingent."

> Nor can we attach significance to Aetna's arguments based upon the absence from Fire's "other insurance" clause of the words "whether ... stated to be primary, contributing, excess or contingent" .... The phrase "whether primary, excess or contingent" does not add anything to the all[-]inclusive "other valid" phrase.... The super-escape phraseology may be more specific, but its listing of other coverage still falls within the ambit of the very broad phrase "other valid" insurance.

*Id.*, 492 N.Y.S.2d 534, 482 N.E.2d at 19 (quoting *Ins. Co. of N. Am. v. Cont'l Cas. Co.*, 575 F.2d 1070, 1073–73 (3d Cir.1978)) (subordinating a policy issued as primary automobile insurance, which was applicable to a particular loss only because of its nonowned "excess" coverage, to a catastrophe or umbrella policy covering many different types of risk, but none of them on a primary basis).

Furthermore, the Court should only depart from the ratable contribution rule when it would "distort the meaning of the terms of the policies involved ... [considering] the purpose each policy was intended to serve as evidenced by both its stated coverage and the premium paid for it." *LiMauro*, 492 N.Y.S.2d 534, 482 N.E.2d at 17. One factor indicating the intent to be "excess over other excess policies," is "the fact that a policy is issued as 'umbrella' or

'catastrophe' coverage, at rates which reflect the reduced risk insured." *Id.*, 492 N.Y.S.2d 534, 482 N.E.2d at 18. While, neither AIG nor RLI address their policies' premium rates, both policies are denominated "umbrella policies."[10] Ultimately, neither party demonstrates that the Court should depart from the ratable contribution rule. Rather, both policies purport to be excess to the other, and therefore should contribute ratably to the settlement amount.

### D. Florida Law

The court's conclusion does not change with respect to Florida law. In Florida, "where two or more policies that apparently cover the same loss both contain excess 'other insurance' provisions, the clauses are deemed 'mutually repugnant.'" *Keenan Hopkins Schmidt and Stowell Contractors, Inc. v. Cont'l Cas. Co.*, 653 F.Supp.2d 1255, 1263 (M.D.Fla.2009). Unlike New York, courts in Florida do not explicitly recognize that departure from the ratable contribution rule is proper when it would "clearly distort" the plain meaning of the policies. At least one court in Florida declined to distinguish between two primary policies with similar "other insurance" clauses on the basis that one policy was "super excess" to the other. *See, e.g., Am. Cas. Co.*, 613 F.Supp.2d at 1319 ("To this Court's knowledge, Florida law does not recognize a 'super excess' other insurance clause.").[11]

---

**10.** According to RLI, "[a] premium analysis in this case would be extremely complicated since the comparison involves a personal insurance policy on the one hand, and a group policy on the other; the latter having discounted rates given the size of the account. Short of expert testimony, it is unforeseeable how either party could present meaningful analysis regarding premiums." (Doc. No. 38 p. 19 n. 9.)

**11.** AIG asks the court to take judicial notice of the motions and responses filed in *Ameri-*

*can Casualty* to demonstrate that *Lumbermens,* [435 N.Y.S.2d 953, 417 N.E.2d 66 (N.Y. 1980)], "was never presented to or considered by Judge Covington ... [and] if the well-reasoned *Lumbermens* decision from New York's highest court had been presented to Judge Covington, the result in *American Casualty* would have been different." (Doc. No. 45 pp. 5–6.) Presumably, the court could take judicial notice of its own records. *United States v. Rey*, 811 F.2d 1453, 1457 n. 5 (11th Cir.1987). However, whether the parties cited *Lumbermens* in their briefs does not

According to RLI, "a battle over the 'excess-ness' of one excess clause over another is futile. But, to the extent that AIG fails to articulate any other arguments, *Beane*, [385 So.2d 1087 (Fla. 4th DCA 1980)], suggests that the 'and not contribute with' phrase in RLI's clause actually renders it to be 'final tier' over AIG's policy." (Doc. No. 56.) However, in *Beane* the court subordinated a primary policy, made excess by a non-ownership clause, to an umbrella policy. 385 So.2d at 1089. The AIG and RLI policies, on the other hand, are both styled as umbrella policies. The Florida Supreme Court has recognized that "umbrella coverages ... are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses." *Allstate Ins. Co.*, 494 So.2d at 489 (quoting Appleman, *Insurance Law and Practice* § 4909.85 (1981)).

AIG argues that it would not contravene public policy to find one excess clause excess to all other excess insurance, because Florida courts enforce escape clauses providing for no coverage at all in the event of other collectible insurance. *See Towne Realty, Inc. v. Safeco Ins. Co. of Am.*, 854 F.2d 1264, 1268 (11th Cir.1988) ("The Florida courts have, on several occasions, recognized that this type of 'escape clause' generally precludes any finding that an insurer is primarily liable if there is other collectible insurance."). However, the Florida Supreme Court has held that when two policies "contain an 'other insurance' clause which states that [the policies] will be excess over other collectible insurance[,] [t]he 'other insurance' clauses in the respective policies cancel each other out." *Allstate Ins. Co.*, 494 So.2d at 489. In order to enforce AIG's "other insur-

ance" clause, the court would have to ignore RLI's "other insurance" clause. Because "[o]ne insurance company may not attempt to rewrite the policy of another insurance company," the court will not depart from the ratable contribution rule. *Allstate Ins. Co. v. TIG Ins. Co.*, 711 So.2d 84, 86 (Fla. 1st DCA 1998).

## IV. CONCLUSION

AIG and RLI are liable for a pro rata share of the settlement determined by their policy limits in relation to the loss. *Allstate Ins. Co.*, 494 So.2d at 489; *Li-Mauro*, 492 N.Y.S.2d 534, 482 N.E.2d at 17. Because the limits of the AIG Policy were $5,000,000.00 and the limits of the RLI Policy were $1,000,000.00, the portion of the $450,000.00 settlement payment properly allocated to AIG is $375,000.00 and the portion of the settlement payment properly allocated to RLI is $75,000.00. Therefore, AIG must reimburse AIG in the amount of $375,000.00.

Based on the foregoing, it is ORDERED as follows:

1. RLI Insurance Company's Cross–Motion for Summary Judgment (Doc. No. 38), filed on January 18, 2011, is GRANTED.

2. AIG Premier Insurance Company's Motion for Summary Judgment (Doc. No. 37), filed on November 18, 2010, is DENIED.

3. The Clerk shall enter a final judgment providing as follows: The Court hereby declares that (1) the RLI Insurance Company and AIG Premier Insurance Company policies provide coverage on a pro-rata basis according to their respective policy limits and (2) AIG Premier Insurance Company must reimburse RLI

tend to prove that Judge Covington did not consider that case, and in any event, would be irrelevant to the court's analysis.

Insurance Company in the amount of $375,000.00. The judgment shall also provide that RLI Insurance Company shall recover its costs of action.

4. The Clerk shall close this case.