CRENSHAW, Judge.
At issue in this appeal is the circuit court’s exercise of personal jurisdiction over the defendant, Auto Club Group Insurance Company (Auto Club). Because the trial court erred in granting Auto Club’s motion to dismiss for lack of personal jurisdiction, we reverse.

Background

This case arises from a third-party bad-faith insurance claim. Linda Betzoldt is the personal representative of the estate of Hazel Dawdy, a Michigan resident. At the time this action accrued, Auto Club was Ms. Dawdy’s insurer; Auto Club only issues policies to Michigan drivers. In the underlying case, Ms. Dawdy injured another woman in a car accident in Tampa. The injured woman made a claim against Ms. Dawdy; Auto Club attempted to accept an offer to settle for policy limits. However, according to the complaint, Auto Club never procured (or delivered) affidavits from Ms. Dawdy regarding other insurances to the injured party’s attorney in Tampa, nor advised Ms. Dawdy of the settlement offer. With this failure, the injured party did not accept the settlement offer and sued Ms. Dawdy, resulting in a judgment of $459,381, only $100,000 of which Auto Club paid. Ms. Dawdy subsequently died and Betzoldt,.as personal representative of Ms. Dawdy’s estate, sued Auto Club for bad faith arising out of the excess judgment. Auto Club moved to dismiss the complaint for lack of personal jurisdiction, and the trial court granted the motion.

Long-Arm Statute

The first question in this case is whether the cause of action falls under Florida’s long-arm statute, section 48.193, Florida Statutes (2012). See Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla.1989). Subsection (l)(d) of section 48.193 does not govern because it refers to “[contracting to insure any person, property, or risk located within this state at the time of contracting.” Virginia Farm Bureau Mutual Insurance Co. v. Dunford, 877 So.2d 22, 23 (Fla. 4th DCA 2004), rejected a similar claim and cited Meyer v. Auto Club Insurance Ass’n, 492 So.2d 1314 (Fla.1986): “We agree with the insurer that it did not contract to insure a risk located within this state at the time of contracting under section 48.193(l)(d).” As to this point, Dunford, Meyer, and this case are indistinguishable, and the trial court did not err in granting the motion to dismiss on this ground.
*404 Whether subsection (l)(g) of the long-arm statute is satisfied is the more difficult analysis. It allows for jurisdiction over a defendant who has “[b]reaeh[ed] a contract in this state by failing to perform acts required by the contract to be performed in this state.” Id. Resolving the issue in this case necessarily requires that we determine whether Betzoldt alleged facts, taken as true, that Auto Club breached a contract requiring performance in Florida. See Wallace v. Dean, 3 So.3d 1035, 1042-43 (Fla.2009) (taking facts as true for the purpose of a motion to dismiss a complaint). There is no contest at this point in the litigation as to whether Auto Club breached the agreement, and we assume it did for the purpose of this jurisdictional analysis. See id. Further, “[t]he insurer’s failure to exercise good faith is ... a breach of contract. And, because the policy covered accidents in all states, it was a contractual obligation to be performed in Florida in this case.” Dunford, 877 So.2d at 23-24. For the reasons that follow, we agree with the Dunford court.
Betzoldt’s bad-faith claim comprises two distinct components: (1) failure to advise her of the substance of the settlement offer, and (2) failure to procure the necessary affidavit, the failure of which triggered the rejection of the offer- to settle for policy limits. The first claim, failure to advise Betzoldt of the substance of the offer of settlement, bears no relationship to Florida. Auto Club could advise Bet-zoldt of such an offer in Michigan, and from Michigan. The agreement to advise her did not require any performance in Florida. However, on the other hand, the failure “to procure a statement under oath from her or her ‘insurance agents disclaiming the existence of any additional known insurers” could not happen entirely outside Florida. Auto Club points out that the complaint merely discusses procurement of the affidavit, and not its delivery to the attorney, who is in Florida. Of course, it is only the delivery that has a nexus to Florida, and not the procurement. However, “[w]e must ... assume that all of the facts alleged are true and draw all reasonable inferences in favor of the pleader.” C & J Sapp Pub’g Co. v. Tandy Corp., 585 So.2d 290, 292 (Fla. 2d DCA 1991) (emphasis added). Here, the logical inference is that if Auto Club never procured the affidavit it needed, it never delivered that affidavit to the attorney in Florida. The delivery of the affidavit was required to occur in Florida. Assuming the facts as true, therefore, there was a breach based on a “fail[ure] to perform acts required by the contract to be performed in” Florida. § 48.193(l)(g). Because we determine that the allegations of the complaint bring the cause within the ambit of the long-arm statute, we must next determine whether Auto Club has minimum contacts with Florida. See Venetian Salami, 554 So.2d at 502.

Minimum Contacts

“[U]nder a given factual situation, even though a nonresident may appear to fall within the wording of a long[-]arm statute, a plaintiff may not constitutionally apply the statute to obtain jurisdiction in the absence of the requisite minimum contacts with the forum state.” Id. As to the issue in this case, we are not without guidance, but we must determine which precedent applies.
The trial court was presented with both. Dunford and Meyer and followed Meyer because it concluded that precedent was binding. Although we recognize that a holding from this court or the supreme court is binding on the trial courts of this district, we conclude that Meyer is inappo-site to this case. Meyer, 492 So.2d 1314; Dunford, 877 So.2d at 23-24. Rather, the circuit court should have followed Dun-ford.

*405
Why Dunford Applies

Dunford is nearly on all fours with this case. Both Dunford and this case are third-party bad-faith cases. “In the present case, the insurer, as it was required to do under the policy, undertook the defense of a claim brought against the insured in Florida, and breached its duty of good faith.” Dunford, 877 So.2d at 24.
Moreover, Dunford specifically distinguishes itself from Meyer:
Meyer is distinguishable from the present case in that in Meyer the insured sued under the policy for PIP benefits, a claim which did not arise out of any activity of the insurer in Florida. ... [T]he insurer has not cited a single case from Florida or any other jurisdiction holding that it would violate due process to allow a suit to proceed in the state where the insurer was guilty of a bad faith refusal to settle a claim against the insured.
Dunford, 877 So.2d at 24 (emphasis added). Auto Club points out that neither of the drivers is from Florida and that Auto Club does not issue policies in Florida. It notes that there is no allegation of Auto Club’s bad faith in the insured’s defense. It argues, “[t]he demand letter happened to have been sent by a Florida attorney, but it might have just as easily come from an attorney in Pennsylvania or Michigan.” But the focus must be not from where the demand letter originated, but where Auto Club had to send it, i.e. where Auto Club had to perform its duties under the contract. See § 48.193(l)(g). Auto Club’s ultimate argument is that its “conduct in connection with [Florida] is [not] ‘such that [it] should reasonably anticipate being haled into court [ ]here.’ ” Venetian Salami, 554 So.2d at 500 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). But in Dunford, the Fourth District held:
In this case the insurer agreed to exercise good faith in defending claims against the insured throughout the United States. It should have foreseen that a breach of that duty in Florida, resulting in a Florida judgment, would subject it to being haled into a Florida court. The maintenance of this suit ¿ccordingly does not violate due process under International Shoe [Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) ].
Dunford, 877 So.2d at 25. The Dunford court rested in part on Eli Lilly & Co. v. Home Insurance Co., 794 F.2d 710, 720 (D.C.Cir.1986). Citing World-Wide Volkswagen, Eli Lilly explained, that “[t]he touchstone of our due process inquiry is whether it would have been ‘foreseeable’ ” that the insurer would be haled into court in the jurisdiction. 794 F.2d at 720. The Eli Lilly court held that the insurer knew that its insured distributed its product nationwide.
They therefore were aware ..that [Eli] Lilly was likely to be sued in any jurisdiction in the nation .... Moreover, [the insurer was] aware that if [Eli] Lilly was sued it was likely to attempt to implead [the insurer] if a dispute arose over their duty to indemnify or defend. In such an ■eventuality it would be completely foreseeable that the insured would successfully hale the insurance company into court.
Dunford, 877 So.2d at 24-25 (quoting Eli Lilly, 794 F.2d at 720).
Betzoldt’s reference to McGow v. McCurry, 412 F.3d 1207, 1215 (11th Cir. 2005), abrogated on state law grounds by Diamond Crystal Brands, Inc. v. Food Movers International, Inc., 593 F.3d 1249 (11th Cir.2010), is well taken insofar as the McGow court stated, in referring to a fifty-state policy: “[P]resumably, [the insurer] offers this type of broad coverage to in *406 duce customers to buy its policies and to pay higher premiums for them.’” Id. (quoting Rossman v. State Farm, Mut. Ins. Co., 832 F.2d 282, 287 (4th Cir.1987)). This is not just a throwaway, but is vital to the jurisdiction of the forum over the defendant because higher premiums are an example of a corporation “passing the expected costs [of litigation] on to customers.” World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. 559. In World-Wide Volkswagen, the Supreme Court discussed a corporation’s options when it faces the reality of multistate litigation-buying its own insurance, passing the costs on to customers, or severing its connection with the forum. Id. Auto Club is not obliged to issue nationwide policies.
Auto Club reasonably should have foreseen being haled into court in Georgia because its policy covered the entire United States. Auto Club hence should have recognized that an accident could occur in any state and could result in litigation, and that Auto Club could be called upon to litigate and to pay in Georgia or any other state within the covered territory.... [I]nsuranee by its nature involves the assertion of claims, and resort to litigation is often necessary. Thus, not only was it foreseeable that Auto Club might be sued in Georgia in connection with an accident in Georgia covered by its policy, but the expectation of being haled into court in a foreign state is an express feature of its policy.
McGow, 412 F.3d at 1215 (quotation marks and citation omitted).

Meyer’s Inapplicability and Its Consequences

As noted above, Meyer is distinguishable as a PIP case rather than a third-party bad-faith case. This distinction should not be minimized because it relates to various reasons Meyer is not binding on this case. First, as discussed, long-arm jurisdiction is entirely different between subsections (l)(d) and (l)(g) and Meyer was limited to subsection (l)(d). Turning to minimum contacts, this is a specific jurisdiction case, not a general jurisdiction case. In a specific jurisdiction case, “ ‘jurisdiction arises out of a party’s activities in the forum that are related to the cause of action alleged in the complaint.’ ” McGow, 412 F.3d at 1214 n. 3 (quoting Consol. Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1291 (11th Cir.2000) (emphasis added)). Because the cause of action in Meyer was based on PIP, rather than third-party bad faith, the entire minimum-contacts lens varies. The Florida Supreme Court’s statement that “[t]he property covered under the policy and the risk insured against were likewise in Michigan, not Florida” is inapposite because it is specifically designed to address a PIP action, not a bad-faith claim. Meyer, 492 So.2d at 1315. Therefore, we agree with Dunford and find Meyer distinguishable. Accordingly, the cause is reversed and remanded for further proceedings.
Reversed.
VILLANTI and LaROSE, JJ., Concur.