NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ERIE INSURANCE EXCHANGE,　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Appellant,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　　)　　　　Case No. 2D15-5750
　　　　　　　　　　　　　　　　　　　)
ALBERT CHRISTOPHER LAROSE,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　Appellee.　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)

Opinion filed October 19, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
John A. Schaefer, Judge.

Jennifer J. Kennedy, Jeremy D. Bailie, and
David J. Abbey of Abbey, Adams, Byelick &
Mueller, L.L.P., St. Petersburg, for Appellant.

Andrew M. Bennett, Hendrik Uiterwyck, and
Tomas L. Gacio of Abrahamson &
Uiterwyck, Tampa, for Appellee.

VILLANTI, Chief Judge.

　　　　　Erie Insurance Exchange appeals the trial court's order that denied its

motion to dismiss Albert Christopher Larose's complaint, which was based on the

argument that the Florida courts did not have personal jurisdiction over Erie, an out-of-

state insurance company that does no business in Florida.[1]  While the trial court properly found that Larose had established a statutory basis for long-arm jurisdiction, the trial court erred in concluding that Erie had the requisite sufficient minimum contacts with Florida to satisfy constitutional due process.  Therefore, we reverse and remand for dismissal.

The relevant facts are not in dispute.  Erie is a Pennsylvania insurance company that is not licensed to issue insurance policies in Florida, has no office in Florida, and does not write policies or otherwise seek out business in Florida.  In 2013, Erie issued an automobile insurance policy to Lake Geneva Indoor Toy Storage, a Wisconsin company.  The policy was issued in Wisconsin, where Erie is licensed to do business, and it provided that the insured vehicles would be principally garaged in Wisconsin.  However, Erie's policy did provide coverage, including uninsured motorist (UM) and underinsured motorist (UIM) coverage,[2] for automobile accidents occurring anywhere in the United States and Canada.

Sometime in 2013, someone from Lake Geneva drove one of its vehicles, insured by Erie, to Florida.  While here, someone gave permission to Larose, a Florida resident, to drive the insured vehicle.  There appears to be no dispute that Larose was driving the insured vehicle in Florida with the permission of the insured.[3]

---

[1]We have jurisdiction.  See Fla. R. Civ. P. 9.130(a)(3)(C)(i).

[2]Unlike Florida, Wisconsin provides for UM coverage and UIM coverage separately.  UM coverage is required; UIM coverage is optional.  Lake Geneva's policy included both coverages.

[3]The record contains very few facts because of the early stage of the proceedings in which this appeal occurred.  Erie did not dispute these limited facts for purposes of the court ruling on its motion to dismiss for lack of jurisdiction.  However,

While Larose was driving the insured vehicle in Pinellas County, Florida, he was involved in an automobile accident, during which he allegedly suffered injuries. Larose subsequently made a demand to Erie for payment of first-party UIM benefits under Lake Geneva's policy. Erie denied the claim on the ground that Larose's damages did not exceed the limits of the tortfeasor's liability coverage. Larose disagreed with this assessment and filed suit against Erie in Florida, seeking to recover the claimed UIM benefits.

In response to Larose's complaint, Erie moved to dismiss, arguing that the Florida court did not have personal jurisdiction over it. In support of its motion, Erie filed a sworn affidavit asserting that its conduct in issuing a Wisconsin automobile insurance policy to a Wisconsin insured did not satisfy any of the subsections of Florida's long-arm statute, section 48.193, Florida Statutes (2013), and that it did not have sufficient minimum contacts with Florida to satisfy constitutional due process.

Faced with this motion and the allegations of Erie's sworn affidavit, Larose was required to establish two criteria to pursue his action against Erie in Florida. First, Larose was obligated to produce evidence that Erie engaged in conduct that fell within one of the provisions of section 48.193; and second, Larose was obligated to show that Erie had sufficient minimum contacts with Florida so that subjecting it to the jurisdiction of the Florida courts would not offend constitutional due process. See Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989) (outlining the required criteria for

---

our opinion should not be construed as a determination of these facts nor preclude any party from disputing them in further litigation.

establishing personal jurisdiction over an out-of-state defendant). Failure to prove either one of these criteria would be fatal to Larose's jurisdictional claim. Id.

To meet his evidentiary burden, Larose filed a sworn memorandum of law arguing that Erie's failure to pay UIM benefits to him in Florida constituted a breach of the contract occurring in Florida, which would provide long-arm jurisdiction under section 48.193(1)(a)(7). Larose also argued that the provision in Erie's policy providing coverage for accidents that occurred anywhere in the United States operated, in essence, as its consent to jurisdiction in all states for purposes of constitutional due process. After an extended hearing on the matter, the trial court denied Erie's motion to dismiss, which ruling it now appeals. In the appeal, Erie once again contends that Larose failed to prove both of the required criteria for establishing jurisdiction over it in Florida.

**Long-Arm Statute**

Addressing first Erie's argument that Larose did not establish that Erie's conduct fell within any of the provisions of section 48.193, we must disagree. Section 48.193 sets forth requirements for both specific and general jurisdiction, either of which is sufficient to satisfy the first step of long-arm jurisdiction analysis. Larose did not attempt to establish general jurisdiction, which would require proof that Erie had "engaged in substantial and not isolated activity within this state." § 48.193(2). Instead, he relied on specific jurisdiction, which requires proof of a causal connection between the plaintiff's claim and the defendant's activity in the state. See Walden v. Fiore, 134 S. Ct. 1115, 1121 n.6 (2014) (" 'Specific' " or 'case-linked' jurisdiction 'depends on an "affiliatio[n] between the forum and the underlying controversy" ' (i.e., an 'activity or an

- 4 -

occurrence that takes place in the forum State and is therefore subject to the State's regulation.')" (alteration in original) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011))). Section 48.193(1) lists the various ways in which this causal connection can be established and includes subsection 48.193(1)(a)(7), which provides specific jurisdiction when a defendant "breach[es] a contract in this state by failing to perform acts required by the contract to be performed in this state." (Emphasis added.) Hence, the determinative issue on this point in this case is whether Erie's refusal to pay UIM benefits to Larose in Florida constituted the failure to perform an act in Florida that was required by the contract to be performed in Florida.[4]

As an initial matter, we agree with Erie that nothing in the plain language of the policy specifically requires it to perform any act in Florida. We also agree that Larose's mere presence in Florida, without more, is insufficient to establish jurisdiction under section 48.193(1)(a)(7). See, e.g., Royal Acquisitions 001, LLC v. Ansur Am. Ins. Co., No. 14-20914-Civ., 2015 WL 1437689, at *3 (S.D. Fla. Mar. 27, 2015) (holding that foreign insurer that insured Georgia property owned by a Florida LLC was not subject to long-arm jurisdiction under section 48.193(1)(a)(7) simply because the insured was in Florida); see also Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1218 (11th Cir. 1999) (holding that "a contractual duty to tender performance to a Florida resident is not in itself sufficient to satisfy" section 48.193(1)(a)(7); instead, there must be a duty to perform an act in Florida) (emphasis added). But those two facts do not mean, ipso facto, that Larose failed to prove jurisdiction under section 48.193(1)(a)(7). Instead, the

_____

[4]As mentioned above, Erie denied Larose's claim based on its evaluation of Larose's claim and its determination that the value fell within the tortfeasor's policy limits. Coverage for the claim was not at issue.

relevant question is whether payment of the claimed first-party policy benefits is due to Larose in Florida when the contract is silent as to the place of payment.

To answer this question, we note that the general rule is that when no place of performance is specified in an insurance policy, the insurer must make payment in the state where the insured resides. 2 Couch on Insurance § 24.13 (3d ed. 2016). This general rule is the law in both Florida and Wisconsin. See, e.g., Venetian Salami Co., 554 So. 2d at 502 (quoting Osborn v. Univ. Soc'y, Inc., 378 So. 2d 873, 874 (Fla. 2d DCA 1979) (holding that Florida law provides that the debtor must seek the creditor and so a breach of contract based on failure to pay occurs where the creditor is domiciled)); Best Price Plumbing, Inc. v. Erie Ins. Exch., 814 N.W.2d 419, 423-24 (Wis. 2012) (quoting State v. Kenosha Home Tel. Co., 148 N.W. 877, 878 (Wis. 1914) (holding that when a contract for the payment of money is silent as to the place of payment, the law will imply that payment is to be made at the residence, office, or place of business of the creditor)). And under that general rule, Erie's refusal to pay first-party policy benefits to Larose, if such conduct is found to constitute a breach of the policy, would be a breach of the contract in Florida—where Larose resides—that would trigger long-arm jurisdiction under section 48.193(1)(a)(7).

Erie's argument that the debtor's place of business—rather than the creditor's place of residence—is the place of payment arises from a misreading or misapplication of authority. Erie's argument is based on language from Couch on Insurance relating to the place of the accident not being the place of payment. And while this is true, it ignores the precedent which holds that it is the location where payment is due rather than the location of the insurer that is the determinative factor.

Further, no reading of Best Price Plumbing could reach the conclusion advocated by Erie that the Wisconsin court held that the place of payment was the insurer's location. The dispute in that case centered on whether payment under an insurance policy for property repairs was properly sent to the insured rather than to the contractor that made the repairs. 814 N.W.2d at 423. Thus, the question there was whether the proper place of payment was the insured's location or the contractor's location. The court noted the general rule that when a contract is silent as to the place of payment, payment is usually due at the place of business of the creditor. Id. at 424. While ultimately the court held that the issue had not been properly preserved for review, it is clear from the opinion that in no event was the proper place of payment going to be the insurer's place of business. Therefore, Erie's argument that Best Price Plumbing stands for the proposition that the proper place of payment is Erie's place of business is simply not supported by this case or any other authority identified by Erie or through our own research.

In this case, Larose's complaint alleged that Erie breached the insurance policy by failing to pay policy benefits to Larose in Florida. Larose also offered evidence that he resided in Florida, thus making Florida the place where payment was due and where any breach would have occurred. This evidence was sufficient to establish the first criteria necessary for long-arm jurisdiction, and the trial court did not err in finding that Larose had satisfied his burden on this criteria.

### Minimum Contacts

We now turn to Erie's argument that even if Larose established a basis for personal jurisdiction under the long-arm statute, Erie was nevertheless entitled to

dismissal because it did not have sufficient minimum contacts with Florida to satisfy constitutional due process.  With this argument, we agree.

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden, 134 S. Ct. at 1121 (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980)).  Traditionally, the question of whether a nonresident defendant is subject to personal jurisdiction in a foreign state depended on whether the defendant had sufficient minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)); see also Venetian Salami Co., 554 So. 2d at 500.  More recently, the Supreme Court clarified this analysis to include a showing that there was "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis added) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Under this more recent formulation, the focus of the inquiry is on the defendant's conduct in the forum state and a determination of whether the defendant's "connection with the forum [is] such that he [or she] should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297.  This focus is required because the due process analysis is intended to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." Walden, 134 S. Ct. at 1122.

Because the focus of the due process analysis is solely on the defendant's connection with the forum state, "the unilateral activity of those who claim some

- 8 -

relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State" for purposes of due process. Pac. Tel. & Tel. Co. v. Geist, 505 So. 2d 1388, 1390 (Fla. 5th DCA 1987) (quoting Denckla, 357 U.S. at 253); see also Walden, 134 S. Ct. at 1119 (holding that "a plaintiff's contacts with the forum State cannot be 'decisive in determining whether the defendant's due process rights are violated' " (quoting Rush v. Savchuk, 444 U.S. 320, 332 (1980))); Burger King, 471 U.S. at 479-80 (noting that the focus must be on the nonresident defendant's conduct in determining whether minimum contacts exist). Instead, a defendant must be haled into court "based on his own affiliation with the State" rather than by contacts he or she may make "by interacting with other persons affiliated with the State." Walden, 134 S. Ct. at 1123.

For example, in Meyer v. Auto Club Insurance Ass'n, 492 So. 2d 1314, 1315 (Fla. 1986), the insured was a Michigan resident who traveled to Florida, where he was involved in an automobile accident. At that time, he was insured by Auto Club, which was a Michigan insurer that was neither licensed to do nor actually doing any business in Florida. Id. Nevertheless, the policy covered accidents that happened anywhere in the United States. Id. at 1316. Meyer subsequently moved to Florida, and he sued Auto Club in Florida for failing to pay first-party PIP benefits arising out of his Florida accident. Id. at 1315. The trial court refused to dismiss the action, but this court reversed, see Auto Club Ins. Ass'n v. Meyer, 458 So. 2d 425 (Fla. 2d DCA 1984), and the supreme court affirmed, Meyer, 492 So. 2d at 1315. In doing so, the supreme court explained:

> The record before us shows that respondent was a foreign corporation, authorized and licensed to do business in Michigan. Respondent neither maintained an office in Florida nor solicited business in Florida. In short,

respondent had no contacts with Florida. That petitioner, while a Michigan resident, was involved in an automobile accident in Florida, or that he eventually moved to Florida, are mere unilateral acts by petitioner and cannot, in and of themselves, provide *respondent* with the requisite minimum contacts mandated by the fourteenth amendment. The United States Supreme Court has stated:

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

> Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1239-40, 2 L.Ed.2d 1283 (1958). See also Kulko v. Superior Court of California, 436 U.S. 84, 98 S. Ct. 1690, 56 L.Ed.2d 132 (1978).

Id. at 1315-16.

Here, similar to Auto Club in Meyer, Erie is a Pennsylvania insurer that issued a policy to a Wisconsin corporation to cover vehicles principally garaged in Wisconsin. Erie is not licensed in Florida, does no business in Florida, has no office in Florida, and has never sought to do business in Florida. In short, Erie did no act to purposely avail itself of conducting any business in Florida. The fact that Erie's insured serendipitously permitted Larose, a Florida resident, to drive an insured vehicle in Florida is a unilateral act by the insured that cannot provide the minimum contacts necessary to support personal jurisdiction over Erie in Florida.

In this appeal, as he did in the trial court, Larose argues that the "national collision coverage provision" of Erie's policy constitutes, in essence, a consent to

jurisdiction in Florida.  Larose argues that Erie could have foreseen that one of its insureds would travel to Florida and get in a covered accident and hence could have foreseen that litigation might ensue.  Larose argues that because Erie provided this coverage despite this foreseeable scenario, Erie's due process rights are not violated by subjecting it to litigation in Florida.

The problem with this argument is twofold.  First, as discussed above, foreseeability does not define the limits of constitutional due process, which is based on the defendant's purposeful contacts with the state rather than mere foreseeability.  Second, this exact argument was specifically rejected by the supreme court in Meyer.  Id. at 1316 (quoting World-Wide Volkswagen, 444 U.S. at 297, and noting that the insured's unilateral act of moving to Florida did not provide the insurer with the minimum contacts necessary to satisfy due process).  In keeping with that ruling, this court has previously recognized that "the predominant theme of World-Wide Volkswagen—and the hallmark of due process—is that mere foreseeability has never been enough to confer personal jurisdiction."  Am. Cmty. Mut. Ins. Co. v. Naples Research & Consulting Ctr., Inc., 534 So. 2d 836, 838 (Fla. 2d DCA 1988).  Even if an insurer might foresee that one of its insureds might travel to Florida, the unilateral activity of that insured, without more, is insufficient to create personal jurisdiction over a nonresident defendant.  Id. (noting that when the "inescapable fact is that it was [the insured] . . . who created the circumstance leading to consequences for American Community Mutual in Florida," that fact would not support a conclusion that those circumstances satisfied due process).  In short, the mere provision of coverage for accidents nationwide is not enough, standing alone, to confer jurisdiction over a nonresident defendant insurer that

- 11 -

has not otherwise taken steps to purposefully avail itself of a particular forum.  See Meyer, 492 So. 2d at 1315; Strickland Ins. Grp. v. Shewmake, 642 So. 2d 1159, 1161 (Fla. 5th DCA 1994).  Larose's argument to the contrary has no support in the law.

Further, the cases relied on by Larose for his position are distinguishable because they involved bad faith actions rather than first party coverage actions.  For example, in Betzoldt v. Auto Club Group Insurance Co., 124 So. 3d 402 (Fla. 2d DCA 2013), Auto Club insured Dawdy, a Michigan resident.  Dawdy drove to Florida, where she was involved in an accident that injured another person.  That person sued Dawdy in Florida, and Auto Club defended Dawdy in the Florida litigation as it was required to do under the insurance contract.  However, when Auto Club attempted to settle that litigation, it acted in bad faith, which resulted in a Florida judgment being entered against Dawdy in an amount greatly in excess of her policy limits.  Dawdy died, and her personal representative, Betzoldt, sued Auto Club in Florida for its bad faith in handling the Florida litigation.  In finding that sufficient minimum contacts existed to support personal jurisdiction over Auto Club in Florida, this court noted that it was Auto Club's conduct in Florida—namely, its bad faith handling of the Florida litigation rather than the insured's conduct—that was sufficient to satisfy due process.  The court reasoned that once Auto Club undertook to defend its insured in the Florida litigation, it had sufficient minimum contacts with Florida for purposes of due process to subject it to further litigation in Florida arising out of its bad faith handling of the underlying litigation.

The Fourth District also discussed this issue in Virginia Farm Bureau Mutual Insurance Co. v. Dunford, 877 So. 2d 22 (Fla. 4th DCA 2004), where it distinguished Meyer as follows:

> Meyer is distinguishable from the present case in that in Meyer the insured sued under the policy for PIP benefits, a claim which did not arise out of any activity of the insurer in Florida. In the present case, the insurer, as it was required to do under the policy, undertook the defense of a claim brought against the insured in Florida, and breached its duty of good faith. The insurer has not cited a single case from Florida or any other jurisdiction holding that it would violate due process to allow a suit to proceed in the state where the insurer was guilty of a bad faith refusal to settle a claim against the insured.

Dunford, 877 So. 2d at 24.

Here, as in Meyer and unlike in Betzoldt and Dunford, Larose has sued Erie for first-party policy benefits. This action did not arise out of any activity by Erie in Florida. This situation is wholly different from that presented in cases that arise out of third-party bad faith actions, in which the insurer had a contractual duty to defend its insured in Florida and allegedly breached that duty. Thus, Betzoldt and Dunford are not controlling and do not compel a finding of personal jurisdiction over Erie in this case.

Finally, Larose's efforts to equate himself with named insureds who live in Florida is misleading at best. Larose attempts to distinguish his case from Meyer and Shewmake by arguing that, unlike the insureds in those cases, he was a Florida resident at the time of the accident. He uses this fact to insinuate that it should have been more foreseeable to Erie that it could be sued in Florida. However, Larose is an "insured" under the policy only because he was a permissive user. He is not the named insured, and there is nothing in the complaint or the evidence presented in support of and against the motion to dismiss to establish that Erie had any reason to know that its insured—a Wisconsin corporation—was allowing a Florida resident to drive one of its insured vehicles in Florida. Larose's attempt to equate himself with a Florida named

insured—rather than a nonresident permissive insured—for purposes of due process analysis is unavailing.

For all of these reasons, we hold that Larose failed to establish that Erie had sufficient minimum contacts with the state of Florida to support personal jurisdiction over Erie by the Florida courts. Therefore, we reverse and remand for dismissal. This dismissal is without prejudice to any right Larose may have to bring his action in Wisconsin or Pennsylvania.

Reversed and remanded with instructions.

WALLACE and BLACK, JJ., Concur.