Rel: March 21, 2025

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2024-2025

_____

### SC-2024-0608

_____

**Ex parte Kentucky Farm Bureau Mutual Insurance Company**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Rebecca Henderson**

**v.**

**Kentucky Farm Bureau Mutual Insurance Company)**

**(Baldwin Circuit Court: CV-24-901036)**

McCOOL, Justice.

Kentucky Farm Bureau Mutual Insurance Company ("Kentucky Farm Bureau") has petitioned this Court for a writ of mandamus directing the Baldwin Circuit Court to dismiss the claim filed against it by its insured, Rebecca Henderson.

Facts and Procedural History

In August 2022, Henderson and her minor son were involved in an automobile collision in Alabama when the car that Henderson was driving was struck by the car that Trey Allan Knapp was driving. At that time, Henderson had an insurance policy that she had purchased from Kentucky Farm Bureau, and that policy provided her with uninsured-motorist ("UM") benefits. In July 2024, Henderson filed a complaint in the circuit court, in which she asserted a negligence/wantonness claim against Knapp and a claim for "damages by contract" against Kentucky Farm Bureau. In support of her contract claim, Henderson alleged that she and her son are both residents of Kentucky, that Kentucky Farm Bureau "is an insurance company doing business in the State of Kentucky," that Knapp is a resident of Alabama, and that Knapp "did not

2

have any liability insurance available." Thus, according to Henderson, she was entitled to UM benefits from Kentucky Farm Bureau.[1]

Kentucky Farm Bureau filed a motion to dismiss Henderson's claim for UM benefits, arguing that the circuit court lacked personal jurisdiction over Kentucky Farm Bureau. See Rule 12(b)(2), Ala. R. Civ. P. In support of its motion, Kentucky Farm Bureau contended that it is "authorized to do business and issu[es] insurance policies only in the State of Kentucky," that it had issued Henderson's insurance policy "at her address [in] Kentucky," that it "does not issue any insurance policies in the State of Alabama or conduct business in the State of Alabama," and that it "has not availed itself of the jurisdiction of any court in Alabama." Kentucky Farm Bureau supported those contentions with an affidavit from Anthony Strode, a "Litigation Supervisor for Kentucky Farm Bureau," who attested that Kentucky Farm Bureau

> "does not do business in the State of Alabama, does not issue insurance policies in the State of Alabama, and has no continuous and systematic contacts for business purposes in Alabama. The automobile policy of insurance was issued to Rebecca Henderson by [Kentucky Farm Bureau] in Kentucky and delivered to her address [in] Kentucky."

---

[1]We note that Henderson did not allege in her complaint that she had filed a claim for UM benefits with Kentucky Farm Bureau or that Kentucky Farm Bureau had denied such a claim.

Thus, according to Kentucky Farm Bureau, because it has no "continuous and systematic" contacts with Alabama, Henderson's "claim for UM benefits is a contract action which should have been filed in the State of Kentucky."

In her response to Kentucky Farm Bureau's motion, Henderson argued that Kentucky Farm Bureau does have contacts with Alabama that are sufficient to allow the circuit court to exercise personal jurisdiction over it. In support of that argument, Henderson contended that her insurance policy "covers her and her family in the event of a motor-vehicle wreck regardless of where they are physically located at the time of said wreck." Thus, according to Henderson, by issuing an insurance policy that provides nationwide coverage, Kentucky Farm Bureau had "purposefully availed itself of the privilege of conducting activities within Alabama" and therefore "should anticipate being haled to court in any state -- not just Alabama." Henderson's response also included her affidavit, in which she attested:

> "I purchased a policy of insurance with Kentucky Farm Bureau to cover me and my family in the event of a motor vehicle wreck. It is my understanding that this policy of insurance covers me and my family not only in Kentucky, but also in every other state, including Alabama. In fact, it was

my intent to purchase a policy that provided me coverage in all 50 states and it is my understanding that it was Kentucky Farm Bureau's intent to sell me a policy that extended coverage to all 50 states. No one at Kentucky Farm Bureau has ever told me otherwise.

"....

"In other words, my Kentucky Farm Bureau insurance policy extends coverage to me in all 50 states. I was involved in a wreck in Alabama, the at-fault party was a resident of Alabama and was cited by an Alabama police officer, and my policy with Kentucky Farm Bureau providing me coverage while in Alabama was in effect on the date of that wreck."

In response to Henderson's argument, Kentucky Farm Bureau argued that "[t]here is a difference between a contract action such as [Henderson's] claim for [UM] benefits and a tort action against an insured." According to Kentucky Farm Bureau, "had Henderson been sued as a result of an automobile accident in [Alabama], then [it] would provide a defense for her since she had allegedly committed a tortious act in [Alabama] which would allow for personal jurisdiction to be asserted." Kentucky Farm Bureau noted, though, that Henderson had not been sued as the alleged tortfeasor in this case but, instead, had sued Kentucky Farm Bureau for UM benefits. Thus, Kentucky Farm Bureau continued to argue that Henderson's "claim for UM benefits must be litigated in … Kentucky where [her insurance] policy was issued."

On August 27, 2024, the circuit court denied Kentucky Farm Bureau's motion to dismiss, without stating its reasons, and Kentucky Farm Bureau timely petitioned this Court for a writ of mandamus.

### Standard of Review

"'A writ of mandamus is an extraordinary remedy, and is appropriate when the petitioner can show (1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court.  Ex parte Inverness Constr. Co., 775 So. 2d 153, 156 (Ala. 2000).'"

Ex parte Gulf Health Hosps., Inc., 321 So. 3d 629, 632 (Ala. 2020) (quoting Ex parte BOC Grp., Inc., 823 So. 2d 1270, 1272 (Ala. 2001)).

"'[A] petition for a writ of mandamus is the proper device by which to challenge the denial of a motion to dismiss for lack of in personam jurisdiction.  See Ex parte McInnis, 820 So. 2d 795 (Ala. 2001); Ex parte Paul Maclean Land Servs., Inc., 613 So. 2d 1284, 1286 (Ala. 1993).  "'An appellate court considers de novo a trial court's judgment on a party's motion to dismiss for lack of personal jurisdiction.'"  Ex parte Lagrone, 839 So. 2d 620, 623 (Ala. 2002) (quoting Elliott v. Van Kleef, 830 So. 2d 726, 729 (Ala. 2002)).  Moreover, "[t]he plaintiff bears the burden of proving the court's personal jurisdiction over the defendant."  Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002).'

"Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So. 2d 519, 525 (Ala. 2003).

"'"In considering a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for want of personal jurisdiction, a court must consider as true the allegations of the plaintiff's complaint not controverted by the defendant's affidavits, Robinson v. Giarmarco & Bill, P.C., 74 F.3d 253 (11th Cir. 1996), and Cable/Home Communication Corp. v. Network Productions, Inc., 902 F.2d 829 (11th Cir. 1990), and 'where the plaintiff's complaint and the defendant's affidavits conflict, the ... court must construe all reasonable inferences in favor of the plaintiff.' Robinson, 74 F.3d at 255 (quoting Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990))."'

"Wenger Tree Serv. v. Royal Truck & Equip., Inc., 853 So. 2d 888, 894 (Ala. 2002) (quoting Ex parte McInnis, 820 So. 2d 795, 798 (Ala. 2001)). However, if the defendant makes a prima facie evidentiary showing that the Court has no personal jurisdiction, 'the plaintiff is then required to substantiate the jurisdictional allegations in the complaint by affidavits or other competent proof, and he may not merely reiterate the factual allegations in the complaint.' Mercantile Capital, LP v. Federal Transtel, Inc., 193 F. Supp. 2d 1243, 1247 (N.D. Ala. 2002) (citing Future Tech. Today, Inc. v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000)). See also Hansen v. Neumueller GmbH, 163 F.R.D. 471, 474-75 (D. Del. 1995) ('When a defendant files a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and supports that motion with affidavits, plaintiff is required to controvert those affidavits with his own affidavits or other competent evidence in order to survive the motion.') (citing Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61, 63 (3d Cir. 1984))."

Ex parte Covington Pike Dodge, Inc., 904 So. 2d 226, 229-30 (Ala. 2004).

## Discussion

Kentucky Farm Bureau argues that there is no evidence indicating that it has any contacts with Alabama that would allow the circuit court to exercise personal jurisdiction over it with respect to Henderson's claim for UM benefits. Thus, according to Kentucky Farm Bureau, it has a clear legal right to the dismissal of that claim. We agree.

In Ex parte Starr, [Ms. SC-2023-0550, Mar. 8, 2024] ___ So. 3d ___, ___ (Ala. 2024), this Court stated:

> "Under Rule 4.2(b), Ala. R. Civ. P., the personal jurisdiction of Alabama courts over out-of-state defendants extends '"'to the limit of due process under the United States and Alabama Constitutions.'"' Ex parte Bradshaw, 328 So. 3d [236,] 240 [(Ala. 2020)] (quoting Ex parte McNeese Title, LLC, 82 So. 3d 670, 673 (Ala. 2011), quoting in turn Hiller Invs., Inc. v. Insultech Grp., Inc., 957 So. 2d 1111, 1115 (Ala. 2006)). Due process provides that 'the exercise of jurisdiction is appropriate so long as the out-of-state defendant has "'some minimum contacts with this state [so that] ... it is fair and reasonable to require the person to come to this state to defend an action.'"' Id. (quoting Dillon Equities v. Palmer & Cay, Inc., 501 So. 2d 459, 461 (Ala. 1986), quoting in turn former Rule 4.2(a)(2)(I), Ala. R. Civ. P.).
>
> "A defendant is deemed to have sufficient 'minimum contacts' with a forum state when the plaintiff shows that the defendant's contacts were either general or specific and that such contacts were purposely directed at the forum state by the defendant. Id. at 241.
>
> "'General contacts' exist when the defendant's contacts with the forum state '"'"are unrelated to the cause of action and ... are both 'continuous and systematic.' Helicopteros

8

Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.9, 415, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984)."'"' Id. (quoting Ex parte Georgia Farm Bureau Mut. Auto. Ins. Co., 889 So. 2d 545, 550 (Ala. 2004), quoting in turn Elliott v. Van Kleef, 830 So. 2d 726, 731 (Ala. 2002), quoting in turn Ex parte Phase III Constr., Inc., 723 So. 2d 1263, 1266 (Ala. 1998) (Lyons, J., concurring in the result)) (emphasis added).

"By contrast, 'specific contacts' exist when the defendant's contacts with the forum state '"'"are related to the cause of action"'"' and '"'"rise to such a level as to cause the defendant to anticipate being haled into court in the forum state."'"' Id. (quoting Ex parte Georgia Farm Bureau, 889 So. 2d at 551, quoting in turn Elliott, 830 So. 2d at 731, quoting in turn Ex parte Phase III Constr., 723 So. 2d at 1266 (Lyons, J., concurring in the result)) (emphasis added).

"'"But regardless of whether jurisdiction is alleged to be general or specific, the nexus between the defendant and the forum state must arise out of '"an action of the defendant [that was] purposefully directed toward the forum State."' Elliott [v. Van Kleef, 830 So. 2d 726, 731 (Ala. 2002)] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 112, 107 S. Ct. 1026, 94 L. Ed. 2d 92 (1987)). 'This purposeful-availment requirement assures that a defendant will not be haled into a jurisdiction as a result of "'the unilateral activity of another person or a third person.'"' Elliott, 830 So. 2d at 731 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985))."'

"Leithead v. Banyan Corp., 926 So. 2d 1025, 1030-31 (Ala. 2005) (quoting [Ex parte] Dill, Dill, Carr, Stonbraker & Hutchings[,P.C.], 866 So. 2d [519,] 525-26 [(Ala. 2003)] (some emphasis in original; some emphasis added). '"'Jurisdiction is proper, however, where the contacts proximately result

from actions by the defendant <u>himself</u> that create a substantial connection with the forum State.'"' <u>Ex parte Bradshaw</u>, 328 So. 3d at 241 (quoting <u>Ex parte Georgia Farm Bureau</u>, 889 So. 2d at 551, quoting in turn <u>Burger King Corp. v. Rudzewicz</u>, 471 U.S. 462, 475 (1985))."

This Court addressed a situation similar to this case in <u>Ex parte Georgia Farm Bureau Mutual Automobile Insurance Co.</u>, 889 So. 2d 545 (Ala. 2004). In that case, Donald Johnson, a Georgia resident, was injured in an automobile collision in Alabama. At that time, Johnson's mother, who was also a Georgia resident, had an insurance policy issued by Georgia Farm Bureau Mutual Automobile Insurance Company ("Georgia Farm Bureau"), which provided Johnson with UM benefits. Following the collision, Johnson filed a claim for UM benefits with Georgia Farm Bureau, which denied the claim because Georgia law conditioned a recovery of UM benefits on the claimant's first obtaining a judgment against the alleged tortfeasor. Johnson and his mother then sued Georgia Farm Bureau in the Randolph Circuit Court, alleging a breach of contract. Georgia Farm Bureau moved to dismiss the complaint on the ground that the circuit court lacked personal jurisdiction over it, and it supported its motion with an affidavit from one of its employees, who attested that Georgia Farm Bureau "was a Georgia corporation,"

10

"did not employ agents in Alabama, did not solicit business in Alabama, and did not sell insurance to residents of Alabama." Id. at 547. In addition, the plaintiffs' complaint acknowledged that their insurance policy had been "delivered to [Johnson's mother] in Georgia." Id.

In response to Georgia Farm Bureau's motion, the plaintiffs "did not offer any evidence or argument that Georgia Farm Bureau either transacted business in Alabama or insured persons who were in Alabama when the insurance was issued." 889 So. 2d at 547. Nevertheless, the plaintiffs argued that Georgia Farm Bureau had contacts with Alabama that were sufficient for the circuit court to exercise personal jurisdiction over it. In support of that argument, the plaintiffs noted that Georgia Farm Bureau sold insurance policies in every Georgia county and that 17 of those counties abut Alabama. Thus, according to the plaintiffs, "'a future consequence to be contemplated by this is that incidents could transpire within the State of Alabama necessitating the interpretation by Alabama courts of policies issued in Georgia.'" Id. at 548. The plaintiffs also noted that Georgia Farm Bureau's website indicated that it was a nationwide company and that, at that time, Georgia Farm Bureau broadcasted a weekly television show into Alabama and other

11

southeastern states, which focused on "'stories of interest to [Georgia] Farm Bureau members.'" Id. at 549. Thus, according to the plaintiffs, "'[t]hrough [Georgia Farm Bureau's] contacts via the web and through television broadcasting into the State of Alabama, business is solicited for Farm Bureau memberships in general.'" Id. The circuit court denied Georgia Farm Bureau's motion to dismiss, and Georgia Farm Bureau sought mandamus relief in this Court.

After setting forth the general principles regarding personal jurisdiction that we have set forth above, this Court concluded that Georgia Farm Bureau had a clear legal right to dismissal of the plaintiffs' complaint. In support of its conclusion, the Court stated:

> "The presence of Georgia Farm Bureau agents in the 17 counties that abut Alabama did not evidence contact with Alabama by Georgia Farm Bureau. While the plaintiffs argue that the presence of these agents should have caused Georgia Farm Bureau to anticipate that a Georgia citizen who purchased a Georgia Farm Bureau policy from one of these Georgia agents would enter Alabama, would suffer a traffic accident while in Alabama, and would put his Georgia Farm Bureau policy at issue in a resulting lawsuit, the plaintiffs offered no evidence that the presence of Georgia Farm Bureau agents in the 17 Georgia counties abutting Alabama was in any way '"purposefully directed toward the forum State."' Elliott [v. Van Kleef], 830 So. 2d [726,] 731 [(Ala. 2002)] (quoting Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. [102,] 112, 107 S. Ct. 1026 [(1987)]). The uncontroverted evidence established that Georgia Farm

12

Bureau agents, including the Georgia Farm Bureau agents in the 17 Georgia counties abutting Alabama, sold policies only to Georgia residents. While Georgia Farm Bureau could well have anticipated that Georgia residents who purchased Georgia Farm Bureau policies in Georgia would enter Alabama and suffer traffic accidents here, these Alabama events would not be the acts of Georgia Farm Bureau. Rather, these events would be '"the unilateral [acts] of [other] person[s]."' Elliott, 830 So. 2d at 731 (quoting Burger King [Corp. v. Rudzewicz], 471 U.S. [462,] 475, 105 S. Ct. 2174 [(1985)], in turn quoting Helicopteros Nacionales de Colombia, S.A. [v. Hall], 466 U.S. [408,] 417, 104 S. Ct. 1868 [(1984)]). The unilateral act of a person other than Georgia Farm Bureau cannot constitute a sufficient contact by Georgia Farm Bureau with Alabama under [former] Rule 4.2(a)(2)(I)[, Ala. R. Civ. P.]. Elliott, 830 So. 2d at 731. …

"While the Georgia Farm Bureau Web site could be accessed, and the weekly television show could be received, by Alabama residents, the evidence does not establish that, by either the Web site or the television show, Georgia Farm Bureau 'purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws,' Burger King[,] 471 U.S. at 475, 105 S. Ct. 2174 (internal quotations omitted), or 'purposefully avail[ed] itself of the benefits of an economic market in the forum State,' Quill Corp. [v. North Dakota], 504 U.S. [298,] 307, 112 S. Ct. 1904 [(1992)]. While the broadcast of the weekly television show into Alabama was a contact with Alabama and presumably was the purposeful act of Georgia Farm Bureau, the subject matter of the television show … did not establish that Georgia Farm Bureau '"should reasonably anticipate being haled into court" in [Alabama]' as a result of the broadcast of the television show into Alabama. Elliott, 830 So. 2d at 730 (quoting Burger King, 471 U.S. at 473, 105 S. Ct. 2174, in turn quoting World-Wide Volkswagen [Corp. v. Woodson], 444 U.S. [286,] 295, 100 S. Ct. 559 [(1980)]).

13

Therefore, this evidence was unavailing.  Elliott, 830 So. 2d at 730.

"....

"Because the plaintiffs failed to present evidence that Georgia Farm Bureau had contacts with Alabama sufficient to confer in personam jurisdiction over Georgia Farm Bureau upon the Alabama trial court under [former] Rule 4.2(a)(2)(I), Ala. R. Civ. P., the trial court erred in denying the motion to dismiss filed by Georgia Farm Bureau.  Therefore, we grant the petition and issue the writ of mandamus.  We direct the trial court to vacate the order denying the motion to dismiss and to enter an order dismissing the case for lack of in personam jurisdiction."

889 So. 2d at 551-52 (emphasis added).

This case is no different than Ex parte Georgia Farm Bureau.  It is undisputed that Henderson is a resident of Kentucky and that Kentucky Farm Bureau sold and delivered her insurance policy to her in Kentucky. In addition, Strode's affidavit indicates that Kentucky Farm Bureau "does not do business in the State of Alabama, does not issue insurance policies in the State of Alabama, and has no continuous and systematic contacts for business purposes in Alabama."  Also, Ex parte Georgia Farm Bureau unequivocally makes it clear that Kentucky Farm Bureau's knowledge that Henderson might drive in Alabama and might suffer an automobile collision here is not sufficient to give the circuit court

14

personal jurisdiction over it because "these Alabama events would not be the acts of [Kentucky] Farm Bureau" but, instead, "would be '"the unilateral [acts] of [other] person[s]."'"  889 So. 2d at 552 (citations omitted).   Thus, Kentucky Farm Bureau "ma[de] a prima facie evidentiary showing that the [circuit court] has no personal jurisdiction" over it with respect to Henderson's claim for UM benefits.  Ex parte Covington Pike Dodge, 904 So. 2d at 229-30.  As a result, Henderson was required to present evidence that tended to refute Kentucky Farm Bureau's prima facie showing.  Id. at 230.

Following Kentucky Farm Bureau's motion to dismiss, Henderson submitted her affidavit to the circuit court, in which she attested that her insurance policy "extends coverage to [her] in all 50 states" -- a fact that Kentucky Farm Bureau did not dispute.  Thus, according to Henderson, by issuing a policy that provides her with nationwide coverage, Kentucky Farm Bureau is "in effect providing services within the State of Alabama …, as well as every other state in the Union," and she argues that, given this nationwide coverage, Kentucky Farm Bureau "could -- and should -- anticipate being haled into court in Alabama on [a UM] claim."  Answer, pp. 7, 8.

15

However, Kentucky Farm Bureau correctly argues that, for purposes of determining personal jurisdiction, there is a distinction between providing its insured with liability coverage throughout the United States, should the insured be sued as the alleged tortfeasor in an automobile collision, and defending itself against a contract claim by its insured. As the Maryland Court of Special Appeals has explained:

> "An insurer who agrees to defend and provide coverage for its insured in all fifty states may, in doing so, 'indicate its willingness to be called into court in the foreign forum,' Rossman [v. State Farm Mut. Auto Ins. Co.], 832 F.2d [282,] 286 [(4th Cir. 1987)], to defend suits brought against its insured. By that agreement alone, the insurer has not, however, purposefully availed itself of the privilege of conducting activities in the forum state so as to subject itself to suit in contract by its insured in that state."

Bahn v. Chicago Motor Club Ins. Co., 98 Md. App. 559, 577, 634 A.2d 63, 71 (1993) (emphasis added). The Montana Supreme Court has likewise held that, for purposes of determining personal jurisdiction, there is a difference between a case in which an insured "is sued as a result of a car accident in a foreign state, and [a] case … where the insured is suing its regional insurer in a foreign state for breach of contract"; in the former, "the insurer is obligated by the terms of its policy to appear for and defend its insured, wherever an accident and resulting lawsuit occurs," but, in

16

the latter, "the place of the accident is immaterial for purposes of jurisdiction, as the action is one to enforce a contract." Carter v. Mississippi Farm Bureau Cas. Ins. Co., 326 Mont. 350, 359-60, 109 P.3d 735, 741-42 (2005) (emphasis added). See also Erie Ins. Exch. v. Larose, 202 So. 3d 148, 155 (Fla. Dist. Ct. App. 2016) ("[T]he mere provision of coverage for accidents nationwide is not enough, standing alone, to confer jurisdiction over a nonresident defendant insurer that has not otherwise taken steps to purposefully avail itself of a particular forum.").

In short, the fact that Kentucky Farm Bureau has contracted to provide Henderson with liability coverage in a tort action brought against her anywhere in the United States does not mean it has the minimum contacts with Alabama that are necessary to give the circuit court personal jurisdiction over it with respect to Henderson's contract claim for UM benefits. Rather, it is undisputed that Henderson is a Kentucky resident and that her insurance policy was sold and delivered to her in Kentucky, and Henderson offered the circuit court no evidence indicating that Kentucky Farm Bureau conducts any business in or otherwise has any contacts with Alabama. Consequently, it is Kentucky -- not Alabama

17

-- that has personal jurisdiction over Kentucky Farm Bureau with respect to Henderson's claim for UM benefits.

We acknowledge Henderson's argument that suing Kentucky Farm Bureau in the circuit court is "a matter of legal necessity." Answer, p. 12. In support of that argument, Henderson notes that, as a resident of Kentucky, that state is actually a more convenient forum in which to litigate her claims; however, she also notes that she must litigate her claim against Knapp in Alabama. Thus, according to Henderson, she has no choice but to sue Kentucky Farm Bureau in the circuit court because, as the provider of her UM benefits, Kentucky Farm Bureau might be required to "step into the shoes of" the uninsured Knapp. Id., p. 10.

However, nothing prevents Henderson from litigating her claim against Knapp in the circuit court and then suing Kentucky Farm Bureau in a Kentucky court should it prove unwilling to provide her with any UM benefits to which she is entitled. See Bailey v. Progressive Specialty Ins. Co., 72 So. 3d 587, 593 (Ala. 2011) (noting that, when an insured desires to make a claim for UM benefits in connection with her action against an alleged tortfeasor, she may either join her insurer as a defendant in that action (subject to personal-jurisdiction considerations)

18

or merely give the insurer notice of the action and notice that she will possibly have a claim for UM benefits at the conclusion of the trial, thereby allowing the insurer to exercise its right to participate in the trial should it desire to do so). Furthermore, while Henderson is of course free to seek a judgment against Knapp, under Kentucky law she is not required to obtain a judgment against him before she may sue Kentucky Farm Bureau for UM benefits. See State Farm Mut. Auto. Ins. Co. v. Riggs, 484 S.W.3d 724, 729 (Ky. 2016) ("It bears repeating … that … the insured need [not] first obtain a judgment against the tortfeasor before filing suit against his [UM] carrier ...."; "an insured's [UM] claim does not spring to life only after a judgment against the tortfeasor. The insured is always in possession of the [UM] claim because his contractual rights are independent of the tort judgment."). Thus, Henderson's "legal necessity" argument is unpersuasive. More importantly, we know of no authority -- and Henderson cites none -- providing that a perceived "legal necessity" will authorize a plaintiff to drag a foreign defendant into an Alabama court when that court has no basis for exercising personal jurisdiction over the defendant.

Conclusion

19

Henderson failed to demonstrate that Kentucky Farm Bureau has any contacts with Alabama that would authorize the circuit court to exercise personal jurisdiction over it with respect to her claim for UM benefits. Thus, Kentucky Farm Bureau has a clear legal right to the dismissal of that claim. We therefore grant Kentucky Farm Bureau's petition and issue a writ of mandamus directing the circuit court to vacate its order denying Kentucky Farm Bureau's motion to dismiss and to issue an order dismissing Henderson's claim against Kentucky Farm Bureau for lack of personal jurisdiction.

PETITION GRANTED; WRIT ISSUED.

Stewart, C.J., and Shaw, Wise, Bryan, Sellers, Mendheim, Mitchell, and Cook, JJ., concur.